# PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* LIGHTHEISER.

[No. 20,582.   Filed October 31, 1906.   Rehearing denied May 3, 1907.]

1. PLEADING. — *Complaint.* — *Master and Servant.*—*Employers' Liability Act.*—*Railroads.*—A complaint showing that the engineer of defendant railroad company's train negligently backed such train, without signal or lookout—a violation of the company's rules and of a city ordinance—over plaintiff, who was standing, on a dark night, near the track waiting to take charge of his engine, is based upon section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901). p. 444.

2. CONSTITUTIONAL LAW.—*Ex Post Facto Laws.*—*To what Subjects Applicable.*—Article 1, §24, of the state Constitution, and article 1, §10, of the federal Constitution, prohibiting the passage of *ex post facto* laws, apply only to criminal and penal laws. p. 445.

3. SAME. — *Contracts.* — *Impairing Obligation of.*—*Railroads.*—*Employers' Liability Act.*—An employers' liability act, affecting the common-law relation of master and servant, is not unconstitutional as impairing the obligation of a contract, where it appears that the term of plaintiff's employment by the defendant company began prior to the taking effect of such act, but that he had no definite contract of service. p. 446, 457.

4. TRIAL.—*General Verdict.*—*Inferences.*—A general verdict for plaintiff determines all issues in favor of such verdict; and all inferences and presumptions will be indulged in its favor, but none against it. p. 446.

5. TRIAL.—*General Verdict.*—*Answers to Interrogatories.*—*Conflict.*—The answers to the interrogatories to the jury control the general verdict only when the conflict between them is so great that it cannot be removed by any evidence admissible under the issues. p. 447.

6. SAME. — *Interrogatories.* — *Master and Servant.*—*Negligence.* —*Assumption of Risk.*—Answers to the interrogatories to the jury showing that there was no evidence that plaintiff could not have seen nor heard the approaching train which injured him, and answers showing that if he had listened and looked he could not have heard nor seen the train, and that there was something which prevented his seeing and hearing such train, is not a finding that his view was not obstructed, nor that he saw and heard such approaching train. p. 447.

7. SAME. — *Interrogatories.* — *Answers.*—*Conflict.*—*Uncertainty.* —Conflicting answers, or answers so uncertain that their meaning cannot be ascertained, cannot control the general verdict. p. 448.

8. MASTER AND SERVANT. — *Employers' Liability Act.* — *Negligence.* — *Vice-Principals.* — Under subdivision four of §7083 Burns 1901, Acts 1893, p. 294, §1, railroad companies are liable for the negligence of employes in charge of signal and telegraph offices, switch yards, shops, round-houses, locomotive engines, trains upon a railway, and of others in authority the same as if such persons were vice-principals of such companies. p. 449.

9. SAME. — *Employers' Liability Act.* — *Assumption of Risk.* — *Vice-Principals.*—Under subdivision four of §7083 Burns 1901, Acts 1893, p. 294, §1, other railroad employes do not assume the risk of the negligence of persons in charge of signal or telegraph offices, switch yards, shops, round-houses, locomotive engines, trains upon a railway or of others in authority, since they are treated as vice-principals and not as fellow servants. p. 450.

10. EVIDENCE. — *Admissions.* — *Corporate Existence.* — *Appearance.*—*Estoppel.*—A corporation, by entering a general appearance, *e. g.*, by filing an answer, in an action, admits its corporate existence and estops itself from denying same; and it is not necessary afterwards for the plaintiff to prove such fact. p. 451.

11. TRIAL.—*Instructions.*—*Assuming Corporate Existence of Defendant.*—An instruction that proof of the corporate existence of defendant railroad company was not necessary, is correct, where such company entered a general appearance to the action. p. 451.

12. MASTER AND SERVANT.—*Employers' Liability Act.—Service. —Evidence.*—To maintain an action under subdivision four,· §7083 Burns 1901, Acts 1893, p. 294, §1, the injured servant must show that he was actually engaged in the railroad company's service at the time of the injury; and evidence showing that the plaintiff was an engineer, that he had received orders for duty, and that he had taken his position to take charge of his engine upon its arrival, shows that he was actually in the service. p. 452.

13. TRIAL. — *Interrogatories.—Answers.—Evidence.*—An answer · to an interrogatory to the jury that a certain person was in charge of the engine causing plaintiff's injury, is supported by the evidence, where plaintiff testifies thereto. p. 452.

14. MASTER AND SERVANT.—*Employers' Liability Act.—Engines. —Charge of.*—Whether the evidence shows that the person in charge of a locomotive engine was an engineer or merely a person in charge, his negligence in backing such engine over another servant renders the company liable under §7083 Burns 1901, subd. 4, Acts 1893, p. 294, §1. p. 452.

15. SAME.—*Municipal Ordinances.—Violations.—Liability.*—The master's violation of a city ordinance is negligence *per se,* and if it proximately resulted in a servant's injury, such servant can recover, unless he was guilty of contributory negligence. p. 453.

16. NEGLIGENCE. — *Proximate Cause. — Evidence.—Railroads.— Violation of Municipal Ordinance.*—Evidence by the plaintiff alone, an engineer standing in the yards ready to receive his engine, that his sight and hearing were good, that he did not see nor hear the approaching engine and car, that such engine was being backed by the person in charge, without signal or lookout, at a rate in excess of the city ordinance, authorizes the jury to find for the plaintiff that such violation was the proximate cause of the injury. p. 456.

17. APPEAL.—*Weighing Evidence.*—The Supreme Court will not weigh conflicting evidence. p. 457.

18. MASTER AND SERVANT. — *Violation of Rules. — Proximate Cause.—Railroads.*—The violation of a rule by the servant, will not prevent a recovery for the master's negligence, unless such violation was the proximate cause of the injury. p. 457.

19. SAME. — *Contributory Negligence. — Railroads. — Backing Trains.—Question for Jury.*—Whether an engineer, who was run over by a train which was backing through a yard, without signal or lookout, in violation of a city ordinance, was

Pittsburgh, etc., R. Co. *v.* Lightheiser—168 Ind. 438.

guilty of contributory negligence in standing near such track to take charge of his approaching engine, was a question for the jury. p. 457.

20. MASTER AND SERVANT.—*Servants in Switch Yard.—"Look-and-Listen" Rule.*—The "look-and-listen" rule, as applied to travelers at a highway crossing, is not applicable in its strictness to employes at work in and about a switch yard. p. 457.

21. APPEAL.—*Bill of Exceptions.—Injured Foot.*—A bill of ex- ceptions showing the testimony describing an injured foot ex- hibited to the jury, sufficiently presents such matter to the Supreme Court on appeal. p. 458.

22. EVIDENCE. — *Injured Foot. — Railroads. — Negligence.*—The plaintiff, whose foot was crushed by the negligence of a railroad company, may exhibit such foot to the jury, in an action for damages on account of such negligence. p. 458.

23. SAME.—*Carlisle Tables of Mortality.*—In a personal injury case, the Carlisle tables of mortality are admissible to show the plaintiff's expectancy in life. p. 458.

24. TRIAL. — *Instructions. — Issues.—Evidence.*—An instruction that if plaintiff proves by a preponderance of the evidence the material allegations of his complaint (without stating what they are), he is entitled to recover, is not erroneous. p. 459.

25. SAME.—*Instructions.—Issues.—Failure to Present.—Duty of Parties*—The mere failure of the judge to state the issues to the jury does not constitute reversible error, it being the duty of the complaining party in such case to prepare a proper instruction containing same and present to the court with a request that it be given. p. 459.

26. SAME.—*Instructions.—Master and Servant.—Negligence.*— An instruction, in an action by a locomotive engineer against his railroad company for negligently backing a train without signal or lookout, in violation of a city ordinance, causing him injuries, that defendant was required to exercise such care as ordinary persons would exercise under like circumstances, is not erroneous. p. 459.

27. TRIAL.—*Negligence.—Several Acts Alleged.—Proof of One.* —Where several acts of negligence are alleged in plaintiff's complaint, proof of one or more of such acts is sufficient. p. 459.

28. APPEAL.—*Briefs.—Points.—Certainty.*—The "points" in ap- pellant's brief, that the instructions given were "indefinite, un- certain, and inapplicable to the evidence," present no question on appeal, it being necessary for such "points" to specify the specific defects. p. 460.

442    SUPREME COURT OF INDIANA,

29.  TRIAL. — *Interrogatories.* — *Counsel's Comment on.*—Counsel have the right to read and comment upon the interrogatories, and discuss the evidence relating to them, in the argument to the jury.  p. 460.

30.  SAME. — *Interrogatories.* — *Misconduct of Counsel.* — *How Questioned.*—Where counsel improperly, in the argument, tell the jury how to answer certain interrogatories propounded, the complaining party may not have the jury discharged, but should immediately ask the court to instruct the jury not to consider such statements; and an instruction by the court to answer same according to the preponderance of the evidence renders such statements harmless.  p. 461.

31.  DAMAGES.—*Excessive.*—*Test.*—Damages awarded will not be considered excessive, unless it appears that the jury acted from prejudice, partiality or corruption.  p. 461.

32.  CONSTITUTIONAL LAW.—*Fifth Amendment.*—*Restrictions on Federal Power.*—*Employers' Liability Acts.*—The fifth amendment to the federal Constitution restricts federal power, and has no application to employers' liability acts passed by the states.  p. 462.

33.  SAME.—*Fourteenth Amendment.*—*Corporations.*—*Citizens.*— *Employers' Liability Acts.*—A railroad company is not a "citizen" within the meaning of that part of the fourteenth amendment to the federal Constitution which inhibits the states from abridging the "privileges or immunities" of citizens of the United States, and therefore an employers' liability act does not affect any "privileges and immunities" guaranteed by such amendment.  p. 462.

34.  SAME. — *Due Process.* — *Persons.* — *Railroads.* — *Employers' Liability Acts.*—Railroad companies are persons within that part of the fourteenth amendment guaranteeing due process of law; and neither such amendment nor the state Constitution forbids the enactment of the employers' liability law (Acts 1893, p. 294).  p. 462.

35.  SAME.—*Employers' Liability Acts.*—*Railroads.*—*Other Corporations.* — *Statutes.* — *Severance.* — Railroad companies cannot raise the question of the constitutional validity of section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), on the ground that it is unconstitutional as to other corporations, since such statute is capable of severance and may be sustained as to railroads.  p. 463.

36.  SAME.—*Discrimination.*—*Railroads.*—Statutes may be enacted affecting the liabilities of railroad operators alone, since the peculiar dangers of operating a railroad afford grounds for a reasonable separate classification of liabilities.  p. 464.

Pittsburgh, etc., R. Co. *v.* Lightheiser—168 Ind. 438.

37. STATUTES.—*Construction.—Intent.*—The purpose of interpretation is to ascertain the true intent; and when the intent is ascertained the language will be construed so as to carry out such intent. p. 464.

38. SAME.—*Employers' Liability Act.—Who Liable.*—Section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), providing that "every railroad or other corporation within this State" shall be liable for certain injuries, should be construed to include any person, company or corporation engaged in operating a railroad in this State. p. 465.

39. SAME. — *Title.* — *Employers' Liability Act.—Railroads.*—The title to the employers' liability act (Acts 1893, p. 294), read in the light of the Constitution (Art. 4, §19), providing that the title shall embrace but one subject and matters properly connected therewith, refers only to the liability of owners and operators, regardless of whether the railroads are owned or operated by persons, companies or corporations. p. 465.

40. APPEAL. — *Briefs.* — *"Points."* — *New Questions.*—Appellant must state every question to be presented on appeal in his "points;" and if he fails to do so, he cannot afterwards raise the omitted questions. Such "points" may be followed by argument in elaboration thereof. p. 467.

From Cass Circuit Court; *T. F. Palmer,* Special Judge.

Action by George W. Lightheiser against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for $10,000 on a verdict for $12,000, a remittitur being filed for $2,000, defendant appeals. *Affirmed.* (Appealed to United States Supreme Court.)

*George E. Ross,* for appellant.

*Frederick Landis, Nelson, Myers & Yarlott* and *McConnell, Jenkines, Jenkines & Stuart,* for appellee.

MONKS, J.—Appellee brought this action to recover damages for personal injuries sustained by him while in the service of appellant by reason of being knocked down and run over by appellant's train at its station in the city of Logansport, Indiana. This is the second appeal of said cause. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247. On the former appeal the second paragraph of complaint was held sufficient upon demurrer. The other

paragraphs of the complaint, being the first, third and fourth, were held insufficient, and the cause reversed for that reason.

When the cause was returned to the court below, appellee filed an amended first paragraph of complaint. Appellant's demurrer thereto for want of facts was overruled. After issues were joined the cause was tried by a jury, and a general verdict returned in favor of appellee. The jury also found. specially upon particular questions of fact stated to them in writing in the form of interrogatories, submitted by the court under §555 Burns 1901, Acts 1897, p. 128. Over a motion by appellant for judgment in its favor on the answers to the interrogatories notwithstanding the general verdict, and over a motion for a new trial, the court rendered judgment on the general verdict in favor of appellee.

The errors assigned call in question the action of the court in overruling (1) the demurrer to the amended first paragraph of complaint; (2) the motion for a judgment in favor of appellant on the answers of the jury to the interrogatories notwithstanding the general verdict; (3) the motion for a new trial.

This court on the former appeal correctly held that the second paragraph of complaint was founded upon section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), and that it was sufficient to withstand a demurrer for want of facts.

It appears from said second paragraph that appellee was in the employ of appellant as a locomotive engineer, and that he received the injuries sued for in the 1. city of Logansport, Indiana, during the night-time, by being knocked down and run over by a train consisting of a locomotive and mail-car belonging to appellant, which was being run backwards in appellant's yards. It is averred in said paragraph that appellee had been ordered to make a trip upon appellant's road; "that, in

obedience to said order, plaintiff, as was his duty under his employment, took his position between the track on which his locomotive was standing and the track on which said locomotive and mail-car were (the mail-car being in front), for the purpose of examining, accepting, taking charge and assuming control, as locomotive engineer, of his said locomotive; that said locomotive began to move eastward, and at the time said locomotive and mail-car passed him, leaving a space of but four feet between said mail-car, which was in front, and his locomotive, where he might stand;" that while appellee was occupying this position, "as it was his duty to do under his employment," he was knocked down and run over by said mail-car and locomotive engine. Said paragraph counts on the negligence of the engineer in control of the locomotive which was moving the mail-car. He is charged with negligently moving said mail-car backwards without a person stationed on the rear end thereof, so as to perceive the first sign of danger and to signal the engineer, as required by a rule of appellant. Said engineer is also charged with negligence in moving said locomotive and mail-car, in violation of certain ordinances of the city of Logansport. It is also alleged that appellee was knocked down and run over by said car as a result of the negligence pleaded.

Said amended first paragraph of complaint is founded on the fourth subdivision of section one of the employers' liability act (§7083, *supra*), and is the same as the second paragraph correctly held good on the former appeal, except it pleads the violation of four additional rules of the company, not mentioned in the second paragraph.

On the former appeal one of the many objections made by appellant's counsel to said second paragraph of complaint was "that, as it appeared therefrom that appellee had been continuously in the employ of appellant as a locomotive engineer for twenty-seven years, the employers' liability act of 1893 is unconstitu-

tional in such a case as amounting to an attempt to impair the obligation of a contract in violation of §24, article 1, of the state Constitution, and §10, article 1, of the Constitution of the United States, which prohibit the passing of any "*ex post facto* law, or law impairing the obligation of contracts." On this appeal he contends that, for the same reason, said employers' liability act violates the *ex post facto* clause of said sections. It is held that the phrase "*ex post facto*" law is only applicable to criminal· and penal laws, and not to laws like the one in controversy. Cooley, Const. Lim. (7th ed.), 373-376; *Calder* v. *Bull* (1798), 3 Dal. 386, 390.

But, if it were otherwise, what was said by this court on the former appeal (*Pittsburgh, etc., R. Co.* v. *Lightheiser, supra*), as to the contention then made, is

3. a sufficient answer to the one now made. This court said on page 262: "It is enough to dispose of this objection to state that it does not appear that at the time said act went into force there was any such definitive agreement between the parties for the future as would warrant the assertion that any contract right of appellant had been impaired."

Upon the authority of the opinion on the former appeal, we hold that said amended first paragraph is sufficient, and that the court did not err in overruling the appellant's demurrer thereto.

Appellant next insists that the court below erred in overruling the motion for a judgment in its favor on the answers of the jury to the interrogatories notwith-

4. standing the general verdict. The general verdict necessarily determined all material issues in favor of appellee, and it is well settled that, unless the answers of the jury to the interrogatories are in irreconcilable conflict with the general verdict, the court did not err in overruling appellant's motion for judgment in its favor. The answers to the interrogatories cannot be aided by any pre-

sumptions, for the rule is that all reasonable presumptions will be indulged in favor of the general verdict, and none will be indulged in favor of the answers to the interrogatories. The special findings of the jury in answer to the interrogatories override the general verdict only when both cannot stand, the conflict being such that, upon the face of the record, it is beyond the possibility of being removed by any evidence admissible under the issues in the cause. *Johnson* v. *Gebhauer* (1902), 159 Ind. 271, 282, 283, and cases cited; *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25, 27; *Southern Ind. R. Co.* v. *Peyton* (1902), 157 Ind. 690, 697; *City of Jeffersonville* v. *Gray* (1905), 165 Ind. 26, 29, and cases cited; *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662-664, and cases cited.

Appellant claims that the jury's answers to interrogatories show that "appellee entered appellant's employ in 1874 as locomotive engineman; that he served as such for ten years; that seventeen years prior to January 19, 1901, the date when he received the injuries sued for, he was promoted to passenger engineman, and that he served appellant as such continuously up to the time of his injuries; that he took charge of his engine on the morning he was injured at appellant's shops, about one mile east of its passenger station, and ran such engine down to the passenger station, where he alighted to get his orders; that he knew of the location and use of appellant's tracks; that the rules of the company required him, after receiving his orders, to go and take charge of his engine; that he received his orders at 3:23 o'clock a. m., but did not go to his engine, although he had ample time and opportunity; that it was customary for appellant to use the east-bound main track while a train was standing at the passenger platform on the west-bound track; that the space between the two tracks was sufficient for plaintiff to stand and not be injured by passing trains; that the jury

found in answer to interrogatories 131 and 133 that there is no evidence to show that the appellee could not see and hear the approaching train that struck him · in time to avoid the injury."

Counsel for appellant insists that, "when the jury found the facts above stated, they found that appellee saw and heard the approaching train, because the law assumes he saw and heard it if the view is unobstructed and there is no evidence that he did not see and hear it. If the facts above set out are true, appellee not only assumed the risk which caused his injury, but he is guilty of contributory negligence. Said facts cannot be true and the general verdict stand."

It is not necessary to determine what effect, if any, the facts stated by appellant's counsel, as found by the jury, would have upon the general verdict, for the reason that the jury also found other and additional facts in answers to interrogatories which show that appellee, while going across the west-bound main track, or while standing between the two tracks, listened to ascertain whether a train of cars was approaching; that he could not have seen the engine and car approaching, if he had looked carefully and diligently, and that there was something to prevent appellee's seeing and hearing the approaching engine and car which struck him, in time to avoid the injury.

In view of these additional facts, it cannot be said that the jury found that appellee's view was not obstructed, nor that appellee saw and heard the approaching train as claimed by counsel for appellant.

If said answers of the jury to interrogatories are inconsistent or contradictory, they antagonize and destroy each other, and cannot control the general verdict.

7.   *Wabash R. Co.* v. *Savage* (1887), 110 Ind. 156, 161; *Baltimore, etc., R. Co.* v. *Rowan* (1885), 104 Ind. 88, 96, 97; *McCoy* v. *Kokomo R., etc., Co., supra,* and cases cited. If they are so uncertain that their mean-

ing cannot be ascertained, they cannot be used to control the general verdict. *Grand Rapids, etc., R. Co.* v. *Mc-Annally* (1884), 98 Ind. 412, 417, and cases cited.

It is clear, under the rules above stated, as established by the decisions of this court, that the facts found by the jury, as above set out, are not in irreconcilable conflict with the general verdict, which found that appellee was not guilty of contributory negligence.

The part of §7083, *supra,* under which this action was brought, is as follows: "Every railroad or other corporation, except municipal, operating in this State, shall 8. be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * Fourth. Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch yard, shop, roundhouse, locomotive engine or train upon a railway."

It is evident that the language quoted describes a class of servants for whose negligence railroads are made liable. In other words, it enlarges the class of vice-principals as it had existed before said act took effect, and under the provisions thereof railroads are liable for the negligence of such employes—that is, any person in the service of such company who has charge of any signal, telegraph office, switch yard, roundhouse, locomotive engine or train upon a railway—the same as for the negligence of vice-principals. *Baltimore, etc., R. Co.* v. *Little* (1897), 149 Ind. 167, 170-172; *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 499, 54 L. R. A. 787, and cases cited; *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 84-86, 59 L. R. A. 792.

It is clear that the doctrine of assumed risk is not applicable to an action brought, like this, under the part of

said fourth subdivision above quoted. To hold otherwise would establish in its full vigor the fellow-servant rule, which the statute was intended to abrogate as to the employes mentioned. *American Rolling Mills Co.* v. *Hullinger* (1904), 161 Ind. 673, 679, 680; *Davis* v. *New York, etc., R. Co.* (1893), 159 Mass. 532, 536, 34 N. E. 1070; *Murphy* v. *City Coal Co.* (1899), 172 Mass. 324, 52 N. E. 503; *Woodward Iron Co.* v. *Andrews* (1896), 114 Ala. 243, 21 South. 440; *Southern R. Co.* v. *Johnson* (1901), 114 Ga. 329, 40 S. E. 235; *St. Louis, etc., R. Co.* v. *Touhey* (1899), 67 Ark. 209, 54 S. W. 577, 77 Am. St. 109; 2 Labatt, Master and Serv., §650, and note; Reno, Employers' Liability (2d ed.), §§249, 250. It is evident that the court did not err in overruling appellant's motion for a judgment in its favor on the answers to the interrogatories.

Appellant contends that "the evidence is wholly insufficient to sustain the verdict for the following reasons: (a) The defendant was, at the time complained of, 'a railroad or other corporation.' (b) The plaintiff was, at the time he was injured, at a place where he had a right to be and in the performance of his duties. (c) Plaintiff's injury was the result of any act or omission of any employe of the defendant in the performance of his duties, while in charge of a locomotive engine or train upon defendant's railway. * * * (e) Plaintiff did not assume the risk which brought about his injury. (f) The evidence conclusively shows plaintiff to have been guilty of contributory negligence. (g) No duty is shown to have been violated, which the defendant owed the plaintiff. (h) There is no evidence to show that if there had been a flagman, with a light, on the end of the car, or the train had been run slower, or the bell rung, the plaintiff would have seen or heard the train and would not have been injured. (i) There is no evidence that the plaintiff was ordered to go between the

tracks, or that such place was where his duties required him to be. (j) The evidence is undisputed that plaintiff was perfectly familiar with the defendant's tracks and their use, the distance between the tracks, that the engine taken from the incoming train was usually backed east along the east-bound track to the shops, while the train it brought in was still standing at the station on the west-bound track, and that it was dangerous to be between the tracks."

It is well settled that a corporation, by a general appearance to an action brought against it, admits its corporate existence and estops itself from denying the same. Adams Express Co. v. Hill (1873), 43 Ind. 157, 162; Ohio Oil Co. v. Detamore (1905), 165 Ind. 243, 247; Seaton v. Chicago, etc., R. Co. (1874), 55 Mo. 416; Chicago, etc., R. Co. v. Glenny (1898), 175 Ill. 238, 51 N. E. 896; Perris Irrigation Dist. v. Thompson (1902), 116 Fed. 832, 54 C. C. A. 336; Gauthier Decorating Co. v. Ham (1893), 3 Colo. App. 559, 34 Pac. 484; Missouri, etc., R. Co. v. Shirley (1878), 20 Kan. 660; Baldwin Coal Co. v. Davis (1900), 15 Colo. App. 371, 62 Pac. 1041; United States Express Co. v. Bedbury (1864), 34 Ill. 459, 467; 5 Ency. Pl. and Pr., 90; 6 Thompson, Corporations, §§7645, 7646; 10 Cyc. Law and Proc., 1347; 3 Cyc. Evidence, 613, and cases cited.

If a corporation, by a general appearance, as by filing an answer, admits that it is a corporation and is thereby estopped from denying that it is a corporation as alleged in the complaint, it is evident that it is not necessary for the plaintiff to introduce any evidence to prove such allegation. Adams Express Co. v. Hill, supra. It follows, also, that the court's instruction to the jury that no proof of such allegation was necessary was correct.

To maintain an action under the fourth subdivision of §7083, supra, appellee must have been actually engaged in

the service of the appellant at the time of the injury. The evidence shows that appellee was, at the time of his injury, in the employ of the appellant as a passenger engineman, and was standing between the west-bound main track and the east-bound main track of appellant's road, where he had gone, as he testified, to take charge of his engine when it backed down to be connected with appellant's passenger-train, which was over an hour late. It is clear from the evidence that he was actually engaged in appellant's service when injured. Reno, Employers' Liability (2d ed.), §13; Dresser, Employers' Liability, §13, and cases cited.

The jury found in answer to the interrogatories that said engine and car that ran against appellee and injured him were not in charge of Jerry Miller, as claimed by appellant, and that said engine was in charge of one Graver as engineman. The evidence showed that engineman Graver was in the service of appellant as such engineman when appellee was injured and that he was running his engine backwards, pushing the mail-car that injured appellee. No person, except said Graver and his fireman, was on said engine when so pushing said mail-car backwards. Appellee testified that said Graver was in charge of said engine. The record does not sustain appellant's contention that there was no evidence that the engineer, Graver, was in charge of said train. Moreover, if said Graver had only been in charge of the locomotive engine, as alleged in the complaint and as testified to by appellee, this would bring the case within the terms of said fourth subdivision. 2 Labatt, Master and Serv., 2037-2039, and note 12, page 2037; *Fairman* v. *Boston, etc., R. Co.* (1897), 169 Mass. 170, 177, 47 N. E. 613; *McCord* v. *Cammell* [1896], A. C. 57.

At the time of appellee's injury there was in force in the city of Logansport an ordinance which contained, among others, in substance, the following provisions:

(1) It shall be unlawful for any person to run any locomotive or car at a greater speed than six miles per hour within the city limits. (2) It shall be the duty of the engineer or other person having charge of any locomotive within the limits of said city to ring the bell before starting such locomotive either forward or backward and to continue the ringing of the bell during the entire time such locomotive or train is in motion while passing through any portion of said city. (3) Any locomotive engine, railroad car, or train of cars running in the night-time on any railroad track in said city, shall have, and keep while so running, a brilliant. and conspicuous light on the forward end of such locomotive engine or train of cars; (4) and shall have and keep some sufficient signal light in charge of some competent person who shall remain upon the rear end of such locomotive engine, car, or train of cars whenever the same shall be backing on any track as aforesaid.

A penalty was provided in said ordinance for the violation of each of said provisions. The evidence of appellee shows that each of the provisions of said ordinance was violated as alleged in the complaint.

The failure, on the part of the appellant and those in charge of said train at the time of appellee's injury, to observe or comply with any one or all of the requirements of said ordinance was negligence *per se,* and appellant was liable to appellee for any injury of which such negligence was the proximate cause, provided he was not guilty of contributory negligence. *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364, 367-372, and cases cited. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, 256.

It appears from the evidence that appellant's railroad at the passenger station in the city of Logansport consisted of two main tracks between Second and Fifth streets, one being the west-bound main track for trains coming from the east and going west, while the second was the east-bound main track for trains coming from the west and

going east. Appellant's passenger station was located
at and across the south end of Fourth street, but on
the north side of the west-bound track, and about six-
teen feet therefrom. South of these two main tracks
was a side-track connected with the east-bound main
track at a point about opposite the east end of the passenger
station, and running west parallel with said main track be-
yond Second street. West of Third street there was a cross-
over connecting said two main tracks, the same being used
to shift trains or parts of trains from one main track to the
other.

On the morning appellee was injured he run his engine
from the roundhouse to the restaurant just west of the pas-
senger station on the west-bound main track, his engine
being headed toward the west. He left his engine in charge
of the fireman and went into the restaurant to get a lunch.
Before 3:05 o'clock a. m., when his train was due, he went
upstairs in the passenger station to get his orders, which
were issued by the train dispatcher. His orders not being
ready he returned to the restaurant. Later he and his con-
ductor returned to the train dispatcher's office for their run-
ning orders, and received the same. Thereupon they re-
turned to the restaurant and remained there until the arrival
of their train from Columbus, Ohio, at 4:38 o'clock a. m.,
about one hour and thirty minutes late, said train coming
in on the west-bound main track. The engine, which had a
headlight burning on its west or forward end, and the mail-
car were cut off from said train and run west on said main
track to the cross-over track, and then shifted to the east-
bound main track and backed east and stopped on said east-
bound main track, clearing the east line of Third street.
While said engine and mail-car were standing there, appel-
lee's fireman backed his engine, which had a headlight
burning on its west or forward end, to the eastward on the
west-bound main track, to be coupled to his train, and
passed said engine and mail-car, at which time, and while

appellee's engine was still going east, said engine and mail-car also backed east, the mail-car in front, on the east-bound main track, and the northeast corner of said mail-car struck appellee, who was standing between the west and east-bound main tracks, fifty or sixty feet west of the west end of his train and ninety or one hundred feet west of the passenger station, knocked him down, and run over and crushed his right leg and his ankle and foot on his left leg, so that his right leg was afterwards amputated seven inches below the knee.

Appellee testified that it was about 4:20 or 4:25 o'clock a. m. when he and his conductor received their running orders; that the weather was very cold, it being three or four degrees above or below zero; that, upon the train's being announced, he came out of the restaurant and went in a southwest direction around the west end of his train standing on the west-bound main track, and went between the two main tracks to the place where he was injured; that appellant's tracks are level, with planking between the rails and between the tracks; that, when he passed his train, the engine and mail-car had been cut off and run west on said west-bound main track; that he went to said place to examine the frost cocks on his engine "when she got there," and to see that the engine was in proper shape; that the frost cocks were on both sides of the engine, but he went between the tracks to examine the left frost cock; that he could not very well examine the frost cocks while in the engine, because he could not see them, that when the frost cocks freeze up it is impossible to get water into the boiler; that he had received a letter from the superintendent of motive power three or four days after Christmas, directing him to examine the frost cocks of his engine before leaving; that it was very dark when he was injured; that one could hardly see anything; that he was facing northwest looking for his engine, and he could see the red light on the tank of his engine from where he was standing. He further

testified: "I was waiting for her to come down. Of course I was not expecting anything else coming down the track, because of a rule of the company. I saw the red light on the tank until an object got in front of me—that other engine come there. There was no man nor any lights of any kind on the end of the mail-car that struck me. I do not think the bell on the engine that was pushing the mail-car that struck me was ringing at or immediately before the time the car struck me; if it had been ringing I think I would have heard it. I was looking and listening at the time and did not hear it. Said mail-car pushed by said engine was moving about ten or twelve miles an hour. The distance between the two main tracks was seven or eight feet. The mail-car projected over the rail about two feet, leaving a space between the two cars of about three or four feet. I had no notice or knowledge of the approach of said mail-car until just about the time it struck me, I saw it. It was so close that I could not get out of the way."

We cannot say that the evidence of the appellee did not authorize the jury to find that the negligent acts of those in charge of said locomotive and train, in violating the provisions of said ordinance, was the proximate cause of appellee's injury. His sense of sight and hearing was good. He looked and listened, but did not see or hear the approaching engine and mail-car. They were approaching him at a speed of from ten to twelve miles an hour. At the same time his engine was backing east on the west-bound main track, to be coupled on the west-bound train. The mail-car was being pushed in the darkness, without ringing the bell on the engine and without a signal light in charge of a competent person upon the rear or east end of said mail-car. Under the circumstances it cannot be said that there was no evidence that the violation of the ordinance before set out was the proximate cause of appel-

lee's injury. The jury by the general verdict so found, and as there was evidence to sustain such finding, under the well-settled rule we cannot disturb the same.

Appellant insists that appellee was off his engine when he was injured, in violation of a rule of the company, and was therefore guilty of contributory negligence. The violation of a rule of the employer will not prevent a recovery by him unless the violation of such rule proximately contributed to his injury.

Appellee testified that he was at the place where he was injured for the purpose of examining the frost cocks of his engine when it backed up; that he had been directed by the superintendent of motive power to examine them before leaving. Whether he was guilty of contributory negligence in so being where he was when he was injured was a question for the jury, and it was properly submitted to them for determination, and we cannot say from an examination of the evidence that there was not evidence to sustain the finding that he was not guilty of contributory negligence, even if the burden of proof as to said issue were on him instead of appellant.

Appellant invokes the "look and listen rule," applicable to travelers at railroad crossings, but that rule does not apply in all its strictness to railroad employes whose employment requires them to remain on or about the track. *Baltimore, etc., R. Co.* v. *Peterson,* supra.

Appellant also contends that as the evidence shows that appellee was in the employ of appellant as engineman from 1874 until January, 1901, when he was injured, that he cannot recover in this action because the employers' liability act of 1893 impairs the obligation of said contract, and is therefore in violation of the provisions of the state and federal Constitutions which prohibit the enactment of laws which impair the obliga-

tion of contracts. There was no evidence of any contract between appellant and appellee, except that appellee entered the service of appellant in 1874 as a passenger engineman, and continued in said service until his injury in January, 1901.

So far as the evidence shows, there was no express agreement between appellant and appellee, at the time he entered appellant's service or since, except such as might be implied from his entering said service. It may be said therefore, as was said on the former appeal (*Pittsburgh, etc., R. Co. v. Lightheiser, supra*): "It does not appear that there was any such definitive agreement between the parties for the future as would warrant the assertion that any contract right of appellant had been impaired."

In the course of his testimony, and in explaining the character of his injury, appellee exhibited his injured foot, and testified that it was stiff at the ankle joint, and by movements of the foot showed the effects of the injury upon his ability to use it. Appellant insists that the court erred in permitting this to be done, because appellant was thereby deprived of its ability to present a complete record, citing *Consolidated Stone Co. v. Summit* (1899), 152 Ind. 297, 303; *Westervelt* v. *National Paper, etc., Co.* (1900), 154 Ind. 673, 681. Appellant was not deprived of any substantial right by the action of the court, and the record is complete. Said cases are not in point here. This court has held that such an exhibition of the injured limb was not error. *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181, 199, 200, and authorities cited; *Citizens St. R. Co.* v. *Willoeby* (1893), 134 Ind. 563, 570; *Louisville, etc., R. Co.* v. *Wood* (1888), 113 Ind. 544, 548-551.

There was no error in admitting in evidence the Carlisle tables of mortality. *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533, 562, 563, and authorities cited.

Appellant says in its statement of points, in objecting to instructions that "general instructions in negligence cases, which tell the jury that the plaintiff is entitled to recover, if they find from the preponderance of evidence that the material allegations of the complaint are proved, and which omit to say what the material allegations of the complaint are which must be established to entitle the plaintiff to recover, are erroneous, because they leave it to the jury to determine questions of law and questions of fact." It has been held by this court that such instruction is not erroneous. *Southern Ind. R. Co.* v. *Peyton* (1902), 157 Ind. 690, 700.

The mere failure of a court to state the issues in the instructions to the jury is not reversible error. If a party desires a full and specific instruction as to what the issues are, it is incumbent on him to prepare such an instruction and present the same to the court at the proper time, with a proper request that it be given. If he fails to do this he has no ground to complain that the court did not state the issues to the jury. Elliott, App. Proc., §§735, 736; 2 Elliott, Gen. Prac., §§896; Gillett, Crim. Law (2d ed.), §§906, 915; 2 Thompson, Trials, §§2338, 2339, 2341; *Krack* v. *Wolf* (1872), 39 Ind. 88.

Appellant complains of an instruction that appellee, "under the circumstances developed by the evidence in this case, was required to exercise such care as persons of ordinary care and prudence would exercise under like circumstances." There was no error in giving said instruction. 1 Labatt, Master and Serv., §329; *Board, etc.,* v. *Bonebrake* (1896), 146 Ind. 311, 317, 318; 4 Thompson, Negligence (2d ed.), §3769, p. 52; 1 Shearman & Redfield, Negligence (5th ed.), §87.

When several acts of negligence are sufficiently alleged in a complaint, it is not true, as claimed by appellant, that all of such acts must be proved to entitle the plaintiff to recover, but a recovery will be justified if it is established that the injury complained of was

the result of one or more of said acts of negligence. *Chicago, etc., R. Co.* v. *Barnes* (1905), 164 Ind. 143, 149, and cases cited.

In appellant's statement of points it is said that "the instructions given by the court of its own motion and at the request of appellee are indefinite, uncertain, and inapplicable to the evidence." It is not stated in the points how or in what respect any one of said instructions is indefinite, uncertain, and inapplicable to the evidence. Such an objection, like objections to evidence on the ground that the same is incompetent, immaterial, irrelevant, and does not tend to prove or disprove any issue in the case, is too general and indefinite to present any question. It is not sufficient to state in a point that the instructions given are erroneous, or that they are uncertain, indefinite, or inapplicable to the evidence, without pointing out why each instruction is erroneous, or how and in what respect the same is indefinite or uncertain, and citing authorities, if any, in support thereof. *American Food Co.* v. *Halstead* (1905), 165 Ind. 633-635; *Liggett* v. *Firestone* (1885), 102 Ind. 514; *Smith* v. *McDaniel* (1892), 5 Ind. App. 581, 583. While a discussion or elaboration of a point is not proper in the statement of points, mere general statements, without specific and definite reasons specifically applied, present no question for decision.

Over the objection of the appellant the court permitted counsel for appellee to read the interrogatories to the jury and discuss the evidence in respect to the same. This action of the court was not erroneous. It was proper for counsel for appellee to read and comment upon the interrogatories, and to array the evidence necessary to be considered in answering the same. *Gresley* v. *State, ex rel.* (1890), 123 Ind. 72, 75; *Southern Ind. R. Co.* v. *Fine* (1904), 163 Ind. 617, 622, 623.

Appellant, however, contends that counsel for appellee told the jury how to answer the interrogatories. The bill of exceptions shows that one of the counsel for appellee spoke of eight interrogatories of the one hundred and thirty-three submitted to the jury. If counsel for appellee told the jury how to answer any one of said eight interrogatories, appellant was only entitled to have the jury sufficiently admonished, without delay, that such statement should not be considered. Counsel for appellant made no request for such admonition, but moved that the court take the case from, and discharge, the jury. This motion was properly overruled. As the court afterwards instructed the jury to answer the interrogatories according to the preponderance of the evidence, appellant has no just ground of complaint. *Southern Ind. R. Co.* v. *Fine, supra,* at pages 622-624.

It is a settled rule of law that courts will not disturb a verdict on the ground of excessive damages, unless the damages are so excessive as to indicate that the jury acted from prejudice, partiality or corruption. *Indiana Car Co.* v. *Parker, supra,* and cases cited; *Louisville, etc., R. Co.* v. *Miller, supra;* Woollen, Trial Proc., §§4409, 4411. Under this rule we cannot say the damages assessed are excessive.

Counsel for appellant insists that section one of the act of March 4, 1893 (Acts 1893, p. 294, §7083 Burns 1901), the employers' liability act, is in violation of the 5th and 14th amendments to the Constitution of the United States, because it deprives appellant of its property without due process of law; that said act violates the 14th amendment, because it denies to appellant the equal protection of the law, and abridges the privileges and immunities of appellant as a citizen of the United States.

The 5th amendment to the Constitution of the United States operates in restriction of federal power and has no

application to the states, and therefore has no application to the act of 1893, *supra.* *Thorington* v. *Montgomery* (1893), 147 U. S. 490, 492, 13 Sup. Ct. 394, 37 L. Ed. 252; *Brown* v. *New Jersey* (1899), 175 U. S. 172, 174, 20 Sup. Ct. 77, 44 L. Ed. 119, and cases cited; *Capital City Dairy Co.* v. *Ohio* (1902), 183 U. S. 238, 245, 22 Sup. Ct. 120, 46 L. Ed. 171; *Fall Brook Irrigation Dist.* v. *Bradley* (1896), 164 U. S. 112, 158, 17 Sup. Ct. 56, 41 L. Ed. 369; *Barron* v. *Baltimore* (1833), 7 Pet. (U. S.) 242, 247-252, 8 L. Ed. 672; 3 Rose's Notes, pp. 367-373, and cases cited; *Barton* v. *Kimmerley* (1905), 165 Ind. 609, and cases cited.

Corporations are not citizens of the United States within the meaning of that part of the 14th amendment to the Constitution of the United States which provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." Therefore that provision of said amendment cannot affect the validity of the act of 1893, *supra.* *Orient Ins. Co.* v. *Daggs* (1869), 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; 3 Rose's Notes Supp., p. 990; *Waters-Pierce Oil Co.* v. *Texas* (1900), 177 U. S. 28, 45, 46, 20 Sup. Ct. 518, 44 L. Ed. 657.

It has been held by this court that while corporations are persons within the meaning of the 14th amendment to the Constitution of the United States, that as applied to railroads said employers' liability act is not in violation thereof, nor in violation of the Constitution of this State. *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 71 Am. St. 300, and cases cited; *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 54 L. R. A. 787, and cases cited.

In *Tullis* v. *Lake Erie, etc., R. Co.* (1899), 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192, the Supreme Court of the United States held that as applied to railroad corpo-

rations said employers' liability act of this state was not in violation of the 14th amendment to the Constitution of the United States, citing *Missouri Pac. R.* v. *Mackey* (1888); 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Minneapolis, etc., R. Co.* v. *Herrick* (1888), 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109; *Chicago, etc., R. Co.* v. *Pontius* (1895), 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675; *Pierce* v. *VanDusen* (1897), 47 U. S. App. 339, 24 C. C. A. 280, 78 Fed. 693; *Orient Ins. Co.* v. *Daggs* (1899), 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552, which sustained the constitutionality of like statutes of other states. It has been uniformly held by the courts of last resort that such laws are constitutional. *Missouri Pacific R. Co.* v. *Haley* (1881), 25 Kan. 35, 53, and cases cited; *Missouri Pac. R. Co.* v. *Mackey* (1885), 33 Kan. 298, 302, 6 Pac. 291; *Johnson* v. *St. Paul, etc., R. Co.* (1890), 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419; *Herrick* v. *Minneapolis, etc., R. Co.* (1883), 31 Minn. 11, 16 N. W. 413, 47 Am. St. 771, 775, 776; *Ditberner* v. *Chicago, etc., R. Co.* (1879), 47 Wis. 138; *Callahan* v. *St. Louis, etc., R. Co.* (1902), 170 Mo. 473, 71 S. W. 208, 94 Am. St. 746, 60 L. R. A. 249, and cases cited; *Powell* v. *Sherwood* (1901), 162 Mo. 605, 63 S. W. 485; Reno, Employers' Liability (2d ed.), §122, and cases cited; Dresser, Employers' Liability, §4, and cases cited; 2 Labatt, Master and Serv., §§643-646, and notes.

Appellant contends, however, that the statute in question violates said constitutional provision, because it only applies to corporations operating railroads and not to persons engaged in operating railroads. Substantially the same objection was made in the case of *Pittsburgh, etc., R. Co.* v. *Montgomery, supra,* and this court in that case, citing *Bucklew* v. *Central Iowa R. Co.* (1884), 64 Iowa 611, 21 N. W. 103, and other cases above cited, held the law valid. The statute in question was

not only held valid as to railroad companies in the case of *Pittsburgh, etc., R. Co.* v. *Montgomery, supra,* but it was also held that objection to its validity could not be made by such companies, on the ground that it embraced all corporations except municipal, and that there were some corporations whose business would not bring them within the reason of the classification; that is, that said employers' liability act was capable of severance, and thus, by putting railroads in a class by themselves, it might be sustained as to railroads, regardless of its constitutionality as to other corporations.

The classification of railroads by themselves was held proper in the cases above cited, on account of the dangerous and hazardous character of the business of operating railroads. This classification is based, not on the difference in employers, but upon a difference in the nature of the employment. As was said in *Indianapolis Union R. Co.* v. *Houlihan, supra:* "The classification is made on the basis of the peculiar hazards in railroading, relates directly to the object to be accomplished, and applies equally to all employers within the class. To separate railroading from other businesses was not an unconstitutional discrimination, because the dangers (the basis of classification) do not arise from the same sources."

True, the employers' liability act of this State provides that "every railroad or other corporation, except municipal, operating in this State shall be liable for damages for personal injuries suffered by any employe."

But in 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §347, it is said to be "indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained and its general intent, a key is found to its intricacies; general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that in-

tent. When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention." The subject-matter of the statute in question here, and its intent and purpose so far. as applicable to railroads, were to protect employes from the peculiar dangers and hazards in railroading. *Indianapolis Union R. Co.* v. *Houlihan, supra,* and cases cited.

Under the decisions cited, the character of the employers is not a controlling factor. The statute is to be given at least a reasonable interpretation, one that will carry into effect the legislative intent. As we have shown, the basis of the classification of railroads by themselves was the hazardous and dangerous character of the employment of operating railroads, and this does not depend upon whether railroads are operated by corporations or by one or more persons.

If the character of the employer, within the meaning of the statute, is not important, and the nature of the employment is the test to be applied in construing the statute, the expression "every railroad or other corporation operating within this State," as applied to railroads, should, under the rule above stated, be enlarged and expanded so as to include any person, company, or corporation engaged in operating a railroad in this State.

This interpretation is sustained by the title of said act which, under our Constitution, "shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title." Const., Art. 4, §19. Under such a constitutional provision the language of the act should be construed in view of its title and its lawful purpose. 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §340; Cooley, Const. Lim. (7th ed.), 202. Said title reads: "An act regulating liability of railroads and other corporations except municipal, for injuries to persons employed by them." The subject of

this act, as expressed in the title, so far as railroads are concerned, is the regulation of their liability to their employes, regardless of whether they are operated by persons, companies, or corporations.

The employers' liability act of Iowa provided: "Every corporation operating a railway shall be liable for all damages sustained by any person including employes of such corporations, in consequence of the neglect of agents by any mismanagement of the engineers or other employes of the corporation." Iowa Code 1873, §1307. The objection made by appellant to the statute in this case seems to have been made to said Iowa statute in *Bucklew* v. *Central Iowa R. Co., supra,* decided before the enactment of the statute in this State, where the supreme court of Iowa said on page 610: "That the business of operating a railroad is peculiarly hazardous and dangerous to employes engaged in the operation of the road, must be admitted. Counsel have not called our attention to any business which is equally hazardous, and as the statute is applicable to all corporations or persons engaged in operating railroads it seems to us that it does not discriminate in favor of or against anyone."

In Minnesota the statute provides: "Every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by an agent or servant thereof by reason of the negligence of another agent or servant." The supreme court of that state said, in *Schus* v. *Powers-Simpson Co.* (1902), 85 Minn. 447, 452, 453, 89 N. W. 68, 69 L. R. A. 887: "The spirit and purpose of this law was the protection of employes engaged in a hazardous and dangerous work, though the literal language thereof limits its operation to railroad corporations, we hold that it applies to any corporation or person engaged in operating a line of railroad, incident to which operation are the dangers and hazards to employes the legislature intended to provide against." The spirit and

purpose of the statute must be looked to in interpreting the statute in controversy. As we have seen, the spirit and purpose of said employers' liability act, so far as railroads are concerned, was the protection of employes engaged in the dangerous and hazardous work of operating railroads in this State, and we hold that it applies to every corporation, company, copartnership, or person engaged in the dangerous and hazardous business of operating a railroad and their employes who are engaged in such dangerous and hazardous work.

It is not necessary, therefore, to decide whether said employers' liability act would be constitutional, if it only applied "to corporations engaged in operating railroads, and not to persons engaged in the same business," as claimed by appellant.

Under the fifth clause of rule twenty-two no alleged error or point not contained in appellant's statement of points can be raised afterwards, either by reply brief, or in oral or printed argument, or on petition for rehearing, but will be considered waived. Under rule twenty-four, the brief may be followed by an argument which shall be confined to a discussion and elaboration of the points contained in the briefs.

Having determined all the questions not waived, and finding no available error, the judgment is affirmed.