HAUCH, EXR. *v.* FRITCH.

[No. 14,713.   Filed April 7, 1934.   Rehearing denied June 8, 1934.]

*Charles A. Lowe*, for appellant.

*Cassius W. McMullen*, for appellee.

KIME, J.—Carrie Fritch filed a claim against the estate of Catherine Haag, in the sum of $2,886.00 for board, care, nursing, washing, ironing, and attendance on the decedent over a period of six years immediately prior to her death. The statutory denial closed the issues, which were tried by a jury, and verdict of $750.00 rendered, together with the answers to five interrogatories. The appellant filed a motion for judgment on the answers to the interrogatories, which were overruled, as was a motion for a new trial. Judgment was rendered on the verdict in the sum of $750.00. Appellant prayed an appeal, without bond, which was granted and proceedings stayed in the court below. Appellant assigned as error the overruling of the motion for a new trial and motion for judgment on the answers to the interrogatories.

The grounds contained in the motion for new trial, as discussed in the brief, all relate to the introduction of evidence as will be discussed later. The interrogatories and their answers are as follows:

Interrogatory No. 1. "Was there any agreement or understanding between the claimant, Carrie Fritch, and the decedent, Catherine Haag, that the said claimant should receive pay or compensation for board, care and services of said claimant while said Catherine Haag was at the home of claimant, Carrie Fritch?

Answer. "No.

Interrogatory No. 2. "Was there any agreement or understanding between the claimant, Carrie Fritch, and the decedent, Catherine Haag, that said Carrie Fritch should receive pay or compensation for board furnished to, or care bestowed upon the said Catherine Haag?

Answer. "No.

Interrogatory No. 3. "Were the services rendered by the claimant, Carrie Fritch, for the decedent, Catherine Haag, and recited in the claim herein rendered to the said Catherine Haag in consideration for the services, labors and favors that the said Catherine Haag did for Carrie Fritch, from time to time and in consideration of her relationship to Catherine Haag, and the love and affection she bore to Catherine Haag, growing out of said relationship?

Answer. "No.

Interrogatory No. 4. "Did the decedent, Catherine Haag, perform services for the claimant and her family while said Catherine Haag was at the home of said claimant?

Answer. "Yes.

Interrogatory No. 5. "Did Catherine Haag while she was at the home of the claimant, Carrie Fritch, live with the said Carrie Fritch, and her family as a member of her family?

Answer. "No, treated as a member of the family.

Interrogatory No. 6. "At the time of the rendition of any services for Catherine Haag, did the claimant, Carrie Fritch, expect payment for her services, board and care of said Catherine Haag?

Answer. "Yes."

The general verdict determined all of the material issues in favor of the appellee. Every reasonable presumption, inference, and intendment will be indulged in support of the general verdict and none indulged in favor of the answers to interroga-

tories. *Terre Haute, I. & E. Traction Co.* v. *Wallace* (1932), 95 Ind. App. 395, 180 N. E. 485, 487; *Pittsburgh, C. C. & St. L. Ry. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 446, 78 N. E. 1033.

Answers to interrogatories only overthrow the general verdict when they are in irreconcilable conflict therewith, but such is not the case here. The ██ answers to the first two interrogatories show that there was no agreement or understanding between Carrie Fritch and the decedent, but the answer to interrogatory number 6 shows specifically that Carrie Fritch expected payment for the services. In view of the general verdict reached it is reasonable to presume that the jury, in answering the first two interrogatories said that there was no formal contract, but that in spite of the fact that there was no such contract, the appellee expected to be paid for her services, as is shown by answer to interrogatory number 6. The answer to interrogatory number 5 specifically states that the decedent was not living in the home of Carrie Fritch as a member of the family, but that even though she was not so living, as a member of that family, had they answered that she was living there as a member of the family, it would have been reasonable to suppose that by that answer they meant that she did not expect to pay for what she received there. The fact that the decedent performed certain services for the claimant and her family is not sufficient to overthrow the general verdict, nor is it sufficient to show that she performed these services in payment for the services she received from the claimant or from her family, as is specifically shown by the answer to interrogatory number 3.

The appellant relies on *Van Hook* v. *Estate of Harriet B. Young, Deceased* (1902), 29 Ind. App. 471, 64 N. E. 670, but that case is easily distinguishable because in

that case the decedent was living with the claimant as a member of the family.

Thus it can be seen that these answers are not in irreconcilable conflict with the general verdict and can not, therefore, overthrow it. It might also be said that these answers are inconsistent with each other and since it is admitted by the appellant we may call attention to the fact that the answer to interrogatory number 3 is inconsistent with the answer to interrogatory number 4. Inconsistent answers to interrogatories tend to destroy one another.

The appellant in his motion for new trial complains of the admission of certain evidence of the witness, Joseph Fritch, but we find no error therein.

The appellant also claimed that error was committed in allowing the witness, Nicholas Probst, to answer the following question: "When you said they were fussing down there, where do you mean?" to which he answered, "How women is, they did not pull any hair, but they quarrelled." We can not see how this question or the answer thereto could be said to be reversible error in any manner, nor is it pointed out by the appellant.

The third cause assigned in the motion for new trial is error in allowing the testimony of an expert medical witness, one Dr. Elliott, who had been the decedent's personal physician to be admitted. The doctor was asked a hypothetical question, containing the facts established by the evidence, to which the appellant objected for the reason that he was the personal physician of the decedent and not competent to testify as to any matter or things which he observed, as her physician, or to take any of the observations into account in the answer of that question. This objection was overruled and the witness answered, as follows: "Well that is rather a peculiar question because these cases involve so many different things, but just a

case like this, not especially this case, but cases not requiring any more care or less care than that, I would think that the very least would be fifteen dollars a week." Merely because this expert happened to be the personal physician of the decedent would not make him incompetent to answer a hypothetical question, detailing the facts that were proven. It is not shown that he took into account in his answer any other facts than those set out in the hypothetical question and as he did not, his evidence would be as competent as that of any other expert.

Finding no reversible error the judgment of the Dearborn Circuit Court is affirmed.