Indianapolis Union R. Co. *v.* Houlihan.

## INDIANAPOLIS UNION RAILWAY COMPANY *v.* HOULIHAN.

[No. 18,995.   Filed June 6, 1901.   Petition for rehearing withdrawn
December 6, 1901.]

APPEAL AND ERROR.—*Record.—Amended Complaint.—Presumption.*
—Where the clerk certifies that the pleading copied into the record
as the amended complaint, is the amended complaint, it will not be
held to be the original complaint which is found to be the same,
word for word, since it was the clerk's duty to embody the amended
complaint in the transcript, and to omit the original, and the pre-
sumption is that the clerk properly performed his official duty.
*pp. 497, 498.*

MASTER AND SERVANT.—*Railroads.—Employers' Liability Act.—Per-
sonal Injuries.—Complaint.*—In an action by a railroad employe
for an injury caused by the alleged negligence of defendant's loco-
motive engineer, it is not necessary to allege in the complaint, un-
der the first part of the fourth subdivision of the first section of the
employers' liability act (§§7083-7087 Burns, 1901), that plaintiff
was "obeying or conforming to the order of some superior at the
time of such injury, having authority to direct." *pp. 498-500.*

SAME.—*Employers' Liability Act.—Railroads.—Personal Injuries.—
Constitutional Law.*—The provision of fourth subdivision of the
first section of the employers' liability act (§§7083-7087 Burns
1901), which holds railroad companies liable to their employes, the
same as to strangers, for the negligence of their servants in charge
of signals and so forth, is not in conflict with the equality clauses
of the federal and State Constitutions. *pp. 500-502.*

RAILROADS.—*Personal Injuries.— Negligence. — Complaint.— Master
and Servant.*—A complaint in an action against a railroad company
for personal injuries alleged that plaintiff was employed by defend-
ant as a telegraph operator at a railroad crossing, and that it was
his duty to keep an account and take a report of all the cars that
passed in and out at the crossing over defendant's line and set the
targets ; that it was plaintiff's duty to go from the telegraph office,
which was located about three feet from the west track, over the
west track to receive reports from the outgoing trains on the east
track ; that while in the performance of his duty he was struck by
an engine on the west track which gave no warning of its ap-
proach, and which he could not see or hear because of obstruction
and noise, and that the engineer in charge of the approaching en-
gine knew of his duty to cross the track at that time. *Held,* that
although the statutory requirements as to approaching crossings
did not apply, it was the duty of the engineer to exercise that dili-

Indianapolis Union R. Co. *v.* Houlihan.

gence for plaintiff's safety, which a man of ordinary prudence would have exercised, under like circumstances, and that the complaint charged actionable negligence.  *pp. 502, 503.*

PLEADING. — *Railroads.* — *Negligence.* — A complaint in an action against a railroad company for personal injuries, charging that the injuries were inflicted by reason of "all of defendant's negligence as herein alleged," includes the negligence of the engineer charged therein.  *pp. 503, 504.*

TRIAL. — *Verdict.*—*Interrogatories.*—*Railroads.*—A telegraph operator at a railroad crossing was required to set targets and receive reports of passing trains, and while in the performance of his duties he was struck by an engine approaching from the north, and injured.  The jury returned a verdict for plaintiff, and in answer to an interrogatory, found that a person standing against the east side of the target pole could see an engine coming from the north, when *it got within* about twenty feet.  *Held,* that such answer did not overbear the general verdict where it was not found that plaintiff occupied the position named when the engine was more than twenty feet away.  *pp. 504, 505.*

EVIDENCE.—*Contracts.*—*Release.*—*Consideration.*—*Master and Servant.*—In an action against a railroad company for personal injuries, defendant pleaded and introduced in evidence a contract releasing defendant from liability in consideration of defendant's agreement to pay certain expenses of plaintiff, and of a sum of money recited as having been paid.  *Held,* that the consideration stated is contractual, and that under a reply of no consideration parol evidence is not admissible to contradict or vary the consideration expressed.  *pp. 505-508.*

From Boone Circuit Court; *B. S. Higgins,* Judge.

Action by John J. Houlihan against the Indianapolis Union Railway Company for personal injuries.  From a judgment for plaintiff, defendant appeals.  *Reversed.*

*A. Baker, E. Daniels, S. M. Ralston* and *C. M. Zion,* for appellant.

*A. J. Terhune, A. J. Shelby, W. J. Beckett* and *A. C. Harris,* for appellee.

BAKER, J.—Judgment for appellee for $15,000 on account of personal injuries.  Appellant assigns that the court erred in overruling (1) its demurrer to the amended complain; (2) its motion for judgment on the jury's answers to interrogatories notwithstanding the general verdict, and (3) its motion for a new trial.

(1) The amended complaint alleges that appellant operates a railway in and about Indianapolis, known as the Belt line; that outside of the city, near the stock-yards, the Belt line crosses the Vandalia railroad at right angles; that the Belt line runs north and south, and the stock-yards are south of the crossing; that each line has two tracks at the crossing, which are parallel and about six feet apart; that on August 8, 1895, appellee was employed by appellant as a telegraph operator at the crossing and it was his duty to keep an account and take a report of all the cars of other railways that passed in and out at the crossing over appellant's line, and report the same to appellant, and set the targets at the crossing, and appellee had no other duties; that trains coming south into the stock-yards ran on the west track of appellant's line and trains passing north out of the stock-yards ran on the east track; that it was appellee's duty to go from the telegraph office, which was located in the northwest angle of the crossing and about three feet from the west track, over the west track to receive reports from the outgoing trains on the east track; that some one in charge of the outgoing train would hand to appellee a report of such train while it was in motion passing north over the crossing; that there was no other way by which appellee could receive such reports and this fact was well known to appellant and its engineer in charge of the locomotive engine hereinafter mentioned; that on August 8, 1895, appellee was in the discharge of his duties at the crossing; that without any negligence on his part he stepped out of the telegraph office and was in the act of stepping onto and across the west track in order to receive a report from an outbound train which was then passing north on the east track, as was his duty to do; that appellee did not know of the approach of any engine on the west track; that he could not see the engine as it approached the crossing by reason of posts and high weeds between the telegraph office and the west track, which appellant had negligently permitted to be and grow upon its

right of way, completely obstructing appellee's view to the north; that he could not hear the engine approaching the crossing by reason of the noise of the outbound train; that appellee was in the act of stepping on the west edge of the west track, without any negligence on his part, when an engine, owned by appellant and in charge of appellant's engineer, was negligently run by the engineer against appellee, without fault on his part, inflicting permanent injuries; that the engineer negligently failed to stop' the engine while approaching the crossing from the north, and negligently failed to give any signal of the engine's approach, although he knew that there was an outbound train running north on the east track over the crossing and that appellee would be compelled to cross the west track in discharge of his duty to get the report; but negligently ran the engine at the high and dangerous speed of twenty miles an hour towards and over the crossing, negligently striking appellee as aforesaid and inflicting the injuries as aforesaid, all without fault or negligence of appellee, but by reason of all of appellant's negligence as herein alleged, from which injuries, etc. Wherefore, etc.

Appellee insists that the ruling on the demurrer to this amended complaint can not be considered because the transcript contains a copy of the original complaint, which is found to be word for word the same as the amended complaint. The argument from this state of the record is that the clerk has erroneously copied the original complaint into the transcript where the amended complaint should have been inserted. But the clerk certifies that the paper copied into the record as the amended complaint is the amended complaint. The presumption is that the clerk has properly performed his official duty. It was his duty to embody the amended complaint in the transcript and to omit the original complaint. §662 Burns 1901, §650 R. S. 1881 and Horner 1897. Matter that should have been omitted will not be held to discredit the clerk's certificate of the correctness of mat-

ter which it was his duty to include. The case of *Ellis* v. *City of Indianapolis*, 148 Ind. 70, is not in point.

Appellant contends that the amended complaint is bad at common law because the facts show that appellee assumed the risks arising from the obstructions to his view and from the negligence of the engineer who was a fellow servant. Since appellee does not attempt to controvert this contention, it will be passed without consideration, and the sufficiency of the complaint will be determined alone from the employers' liability act. Acts 1893 p. 294; §§7083-7087 Burns 1901, §§5206s-5206v Horner 1897.

The first section of the act provides: "That every railroad * * * corporation * * * shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * Fourth. Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch yard, shop, round-house, locomotive engine or train upon a railway, or where such injury was caused by the negligence of any person, co-employe or fellow servant engaged in the same common service in any of the several departments of the service of any such corporation, the said person,. co-employe or fellow servant at the time acting in the place and performing the duty of the corporation in that behalf, and the person so injured obeying or conforming to the order of some superior at the time of such injury having authority to direct."

The amended complaint does not aver that appellee was "obeying or conforming to the order of some superior at the time of such injury having authority to direct", and appellant claims that this omission leaves the pleading fatally deficient. The fourth subdivision of the first section of the act is divisible into two parts: A railroad company is liable for damages for personal injury suffered by an employe while in its service (that is, while acting within the scope

of his employment), the employe being free from contribu-
tory negligence, (1) "where such injury was caused by the
negligence of any person in the service of such corporation
[that is, acting within the scope of his employment] who
has charge of any  *  *  *  locomotive engine or train
upon a railway," or (2) "where such injury was caused by
the negligence of any person, co-employe or fellow servant
*  *  *,  the said person, co-employe or fellow servant at
the time acting in the place and performing the duty of the
corporation in that behalf, and the person so injured obey-
ing or conforming to the order of some superior at the time
of such injury having authority to direct". From the words
used and the structure and scope of the act, we are of opin-
ion that the concluding clauses of the fourth subdivision
limit and qualify only the liability expressed in the second
part of the fourth subdivision, and that railroad companies
are answerable for the negligence of their servants in charge
of signals, telegraph offices, switch yards, shops, round-
houses, locomotive engines and trains upon their railways,
to their employes the same as to strangers. .This was the
effect given to the fourth subdivision in the case of *Balti-
more, etc., R. Co.* v. *Little,* 149 Ind. 167, and in *Baltimore,
etc., R. Co.* v. *Peterson,* 156 Ind. 364. In *Pittsburgh, etc.,
R. Co.* v. *Montgomery,* 152 Ind. 1, 71 Am. St. 301, the
complaint alleged that the plaintiff was a freight brakeman
in the defendant's service and that he was injured through
the negligence of the defendant's engineer. The sufficiency
of the complaint to exempt the plaintiff from the operation
of the common law rule as to fellow servants and to state a
cause of action under the fourth subdivision of the em-
ployers liability act, was challenged on the ground that there
was no allegation that the engineer was performing the duty
of the corporation in that behalf and that the plaintiff was
obeying or conforming to the order of some superior having
authority to direct. The opinion was written by a member
of the court who did not agree with the majority in their

construction of the fourth subdivision, and there may be difficulty at some points in distinguishing between what he said for himself and what for the court; but we are of opinion that the decision of the court on this point was wholly expressed in the words "the holding of the court is that, in order to make the complaint good under the first part of the subdivision quoted [the fourth subdivision], as to the point in question, it is only required that it state that the engineer, while in the service of appellant, in charge of a locomotive engine, negligently injured the appellee, both being at the time acting in the line of duty as employes of the appellant", and that that holding is not departed from in the present case.

Appellant contends, however, that the construction which limits the operation of the qualifying clauses in the second part of the fourth subdivision to the liability expressed in that part of the subdivision, and which holds railroad companies liable to their employes the same as to strangers for the negligence of their servants in charge of signals, and so forth, brings the first part of the fourth subdivision into conflict with the equality clauses of the federal and State Constitutions. The argument briefly is this: At common law every employer is protected by the doctrine that every employe assumes as an incident of his employment the risks arising from the negligence of his fellow servants; there is no justification for the withdrawal of railroad companies from the general class of employers except the exercise of the police power for the protection of employes; the only reasonable basis for a classification in the exercise of the police power is the protection of employes who are subjected to unusual dangers; a classification that selects for protection only those employes who are subjected to unusual dangers by reason of acting in obedience to the orders of some superior having authority to direct, is constitutional; but a classification that selects for protection all employes without regard to the dangers naturally incident to their work and

Indianapolis Union R. Co. v. Houlihan.

whether they act on their own initiative or in obedience to the order of some superior who has authority to direct (as the attorney of the railroad company and its down-town ticket seller for example), is a classification in name only, is arbitrary, has no relation to the object to be accomplished, discriminates against railroad companies by subjecting them to liability for injuries to a class of employes with respect to whom employers in other businesses are not made liable by the act, and is therefore unconstitutional.   Our answer is:   It is competent for the legislature, in the exercise of the police power, to take steps for the protection of the lives and limbs of all persons who may be exposed to dangerous agencies in the hands of others; the powerful forces in railroading that are under the direction and control of those in charge of "any signal, telegraph office, switch yard, shop, round-house, locomotive engine or train upon a railway," were proper to be selected as sources of unusual danger which should be guarded against; the object to be accomplished was to incite railroad companies to use the utmost diligence in the selection and supervision of their servants who are put in charge of these dangerous agencies, so that fewer lives and limbs of those who are entitled to claim the protection of our laws would be sacrificed; the legislature evidently considered that strangers and employes (the attorney and the ticket seller for example) who were not fellow servants of those in charge of the agencies named were sufficiently protected by the railroad companies' existing liability to them for the negligent operation of those dangerous agencies; the legislature evidently determined to protect all persons who were not already protected from the negligent use of particular instruments; the classification is made on the basis of the peculiar hazards in railroading, relates directly to the object to be accomplished, and applies equally to all employers within the class; to separate railroading from other businesses was not an unconstitutional discrimination, because the dangers (the basis of the classification)

do not arise from the same sources; but the claim that a classification, not made on the basis of the dangerous agencies employed in the business, but founded on the question whether the employe who was injured without his fault by a fellow servant's negligent use of a dangerous agency was acting at the time on his own initiative in the line of his duty or under the orders of a superior, is the only constitutional classification, is unwarranted; a train is wrecked through the negligence of the engineer, two brakemen are injured without fault on their part, one acting at the time in obedience to the conductor's orders, the other acting on his own initiative within the line of his duty; there should be and there is no constitutional limitation upon the legislature's exercise of the police power by which a law may not be enacted to protect both brakemen equally from the negligence of the engineer. We hold, therefore, that the act is not obnoxious to the objections urged by appellant. Under the employers liability acts in other states,—Alabama, Colorado, Iowa, Kansas, Massachusetts,—the argument of appellant in reference to the interpretation of the fourth subdivision of section one of our statute, could not have been advanced, for the corresponding subdivision of their statutes is limited to creating a liability for the negligence of those in charge of signals, engines, etc., in favor of all co-employes. And such legislation has been upheld by the state and federal courts. Reno, Employers' Liability Acts, §§84-5; *Missouri, etc., R. Co.* v. *Mackey,* 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107.

It is asserted by appellant that the amended complaint does not charge actionable negligence. The situation was this: Appellee could not hear the engine approaching from the north on account of the noise of the freight train passing over the crossing from the south; his view to the north was obstructed so that he could not see the approaching engine until he came to the west rail of the west track; it was his duty to cross the west track to get the report from

the conductor of the train on the east track; that train was then passing the crossing and the time had arrived when it was necessary for appellee to cross the west track to get the report; the engineer on the west track knew that it was appellee's duty to get the report; the obstructions between appellee and the approaching engine and also the train on the east track and its position with reference to the crossing were within the view of the engineer; he gave no signal by bell or whistle of his approach, did not stop nor check the speed of his engine, but ran it at twenty miles an hour (about thirty feet a second) upon appellee as he was in the act of stepping on the west edge of the west track.    Conceding that the engineer's statutory duties to sound the whistle and ring the bell on approaching a highway crossing and to stop his engine before crossing an intersecting railroad do not apply in this case, it does not follow that the engineer owed no duty to appellee.    It was his duty to exercise that diligence for appellee's safety which a man of ordinary prudence would have exercised under like circumstances.    Ordinary prudence, not to say common humanity, should have restrained the engineer from hurling a missile of many tons weight at a speed of thirty feet a second at a point where he knew his fellow man was about to step, in discharge of his duty, without any warning (which the engineer might have given) until it was too late to escape the danger.

Appellant suggests that the amended complaint does not show that the negligence charged was the proximate cause of appellee's injury.    The averment is that the injuries were inflicted "all without fault or negligence of appellee, but by reason of all of appellant's negligence as herein alleged".    Counsel draw a distinction between "appellant's negligence" and the "engineer's negligence".    The complaint, they say, charges negligence of appellant in permitting obstructions to view, but that could not be the proximate cause because the risk from that source was apparent to appellee and as-

sumed by him. The engineer's negligence, if any, they say, is not alleged to be the proximate cause. But a corporation can only act through agents. Under the employers' liability act, a corporation is made answerable for the negligence of an engineer the same as for that of a roadmaster. The engineer's negligence is therefore included in the averment that the injury was due to "all of appellant's negligence as herein alleged". Appellant has shown no error in the ruling on the demurrer.

(2) Under the assignment that the court erred in overruling appellant's motion for judgment on the jury's answers to interrogatories, the first question raised is as to the necessity for appellee's acting at the time of his injury in conformity to the orders of some superior who was present and directing his movements. The answers to interrogatories disclose that appellee was acting upon his own initiative. It was not necessary for appellee to prove that any superior was present and ordering his action.

The jury answered that the target pole was six feet two inches west of the west rail of the west track, and that a person standing against the east side of the target pole could see an engine coming from the north on the west track when it got within about twenty feet. Appellant contends that these answers overbear the general verdict that appellee was free from fault. The jury do not find that appellee occupied the position named when the engine was twenty feet or less away. If he was at that point and the engine was more than twenty feet distant, he could not have seen it. Standing at the east side of the target pole, his body may have taken up a foot or more of the six foot space between the pole and the track. The pilot-beam of the engine may have projected eighteen inches or two feet over the rail. There may have been less than three feet between appellee and the line of danger. He may have listened attentively and heard nothing of the approaching engine on account of the noise made by the freight train. He may have looked

attentively and found no engine in sight on the west track. He may have taken one step and been unable to check himself and retreat in the two-thirds of a second which the engine took to cover twenty feet.   There is nothing in the answers to the interrogatories to negative these conjectures. which may have been the evidence.   On the other hand, the jury were asked:   "Could the plaintiff, just before he was injured, as he approached the track where he was injured, have seen the engine which injured him in time to have avoided it, if he had looked vigilantly to the north?" And they answered "No."   Appellant's motion for judgment was properly overruled.

(3)   Among the grounds for a new trial it is claimed that the court erred in permitting appellee to contradict the terms of a written contract by parol evidence.

Appellee claims that the evidence is not in the record. The case was tried in 1898, and the sufficiency of the bill is therefore to be determined by the act of 1897.   The same objections are made to the bill that were considered and held unavailing in *Diezi* v. *Hammond Co.,* 156 Ind. 583.

Appellant pleaded a release, and appellee replied that he executed the release without consideration.   Appellant proved the execution of the following instrument:   "The Indianapolis Union Railway Company to John J. Houlihan, Dr.   To amount in compromise of claim for injuries received by him on August 8, 1895, at the Vandalia crossing of the Belt railroad by his being struck by an engine of said company on said Belt railroad while he was attempting to cross the track in the discharge of his duties as a telegraph operator in the employ of said company, said amount being in addition to all fees and charges payable to physicians and St. Vincent's hospital for services and care rendered to said Houlihan on account of such injuries, which amount of fees and charges said company, as a part of said compromise, agrees to pay; and in consideration of the said agreement

to pay said fees and charges and the amount herein mentioned as a cash payment to him, the said Houlihan, by his signature to the receipt below, does release and discharge the said company from any and all claims, demands, actions and rights of action that he now has or may hereafter have by reason of said injuries and accident. $25. Approved. Baker & Daniel, Attys. Sept. 25, 1895, received of the Indianapolis Union Railway Company $25 as payment in full of the above account, in consideration of which I release and discharge said company as above specified. John J. Houlihan. Approved: A. A. Zion, superintendent; James M. McCrea, president." After this contract has been proved and introduced in evidence, it was purely a matter of law for the court to determine whether the consideration from appellant to appellee was contractual or not. If the instrument stated a contractual consideration, parol evidence was not admissible to vary or contradict the consideration expressed; but if the consideration was expressed merely as a recital of a precedent or contemporaneous fact, parol evidence was receivable to prove that the recited fact was untrue, that the recited consideration was not paid at all or was paid on a different account. The court held that the consideration from appellant to appellee was not contractual and permitted appellee to testify that there was no consideration for his execution of the release and that the $25 paid him at the time was a gratuity. This was error. *Pickett* v. *Green,* 120 Ind. 584; *Conant* v. *National State Bank,* 121 Ind. 323; *Reisterer* v. *Carpenter,* 124 Ind. 30; *Stewart* v. *Chicago, etc., R. Co.,* 141 Ind. 55; *Pennsylvania Co.* v. *Dolan,* 6 Ind. App. 109, 51 Am. St. 289. In *Pickett* v. *Green, supra,* a written contract was executed by the terms of which Pickett, in consideration of the after-expressed covenants of Green, sold his office furniture and the good will of his medical practice to Green, and Green, in consideration of the sale and Pickett's covenants, agreed to pay Pickett $100. Pickett set up in practice in violation of the contract, and

in answer to Green's complaint for injunction pleaded that the real consideration for his covenants was Green's undertaking to purchase certain real estate at $1,400 and that Green had repudiated his agreement. The ruling of the court in sustaining a demurrer to this answer was affirmed. The following extract from *Conant* v. *National State Bank, supra,* indicates the scope of that decision: "In this instance the appellants can not add to the written contract a stipulation that the sellers of the mill machinery agreed to furnish and place in operation machinery that would manufacture three designated grades of flour, and with a capacity of 100 barrels daily, for the specific and unambiguous provision of the contract is that the sellers agree to furnish and put in operation 'machinery for a 100-barrel mill', and the machinery which they agreed to furnish is particularly described and designated. The provisions of the contract are specific, and these specific provisions can not be supplanted by oral statements. To permit parties to substitute oral statements for written stipulations would render written instruments valueless, and leave to the uncertainty of human memory the terms of contracts". In *Reisterer* v. *Carpenter, supra,* certain personal property was sold by written contract in which the purchaser agreed to pay therefor by taking up and canceling certain specified debts of the seller. In the absence of any charge of fraud or mutual mistake, the seller was not permitted to show that the consideration for the sale was other than that expressed in the written instrument. On the other hand, the cases of *Stewart* v. *Chicago, etc., R. Co., supra,* and *Pennsylvania Co.* v. *Dolan, supra,* are illustrative of the class in which the consideration is not contractual, but is expressed merely as a recital of a fact. In both of these cases the form of the contract was this: Know all men by these presents, that I, for and in consideration of the sum of (a stated number of) dollars, to me paid by the railroad company, the receipt whereof is hereby acknowledged, do release and discharge the railroad

State, *ex rel.*, *v.* Webster.

company from, etc. In such a contract, it is manifest that the railroad company does not agree to pay the sum of money named or to do anything else for the benefit of the other party. The only contractual covenants are those of the employe, and they are made, not in consideration of the company's covenants to pay or do something for the employe, but in consideration of a sum of money recited as having been paid. In this case appellee's covenants of release were made "in consideration of appellant's agreement to pay said fees and charges [to the physicians and hospital] and the amount herein mentioned as a cash payment to him." The consideration on each side was the mutual covenants of the other. In the absence of any issue of fraud or mutual mistake, appellee should not have been permitted to deny that the consideration for his release was correctly stated in the contract.

Other questions as to evidence and instructions are presented, but as they will not necessarily arise on another trial, they are not considered.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.