# Haynes L. Hackett, Appellee, v. Chicago, Indianapolis & Louisville Railway Company, Appellant.

## Gen. No. 16,135.

1. NEGLIGENCE—*when may be established by inference.* While under the law in Illinois, the doctrine, *res ipsa loquitur* does not apply between master and servant, it does not follow that courts or jurymen having before them all the conditions of an accident, cannot find negligence by inference from the evidence, without the necessity of evidence by witnesses of what did or did not take place.

2. CONTRIBUTORY NEGLIGENCE—*acting upon sudden impulse.* "One who does an act under an impulse or upon a belief created by a sudden danger attributable to another's negligence, is not to be regarded as guilty of contributory negligence even though the act would be regarded as a negligent one if performed under circumstances not indicating such peril."

3. MASTER AND SERVANT—*what risks not assumed.* "The jerks and jars given without warning to a brakeman who had received notice from competent authority and had been led to believe that no jerks would be made at the time, are not usual and ordinary jerks, and it is not accurate to say their risk is assumed as an implied risk of service."

4. COMITY—*when constitutionality of law of sister state will not be considered.* The appellate court will not consider the question as to whether or not the law of a sister state is valid where both the supreme court of the state of enactment and the United States Supreme Court have held such law to be valid.

5. PLEADING—*when one count sufficient to sustain verdict.* If one count or more is sufficient to sustain a verdict it is enough, where the instructions are not so framed as to involve the possibility that the jury may have found the defendant guilty merely on a faulty count.

6. PLEADING—*when declaration states cause of action under Employers Liability Act of Indiana. Held,* that the declaration in this case stated clearly and with sufficient exactness a cause of action under the Employers Liability Act of Indiana.

7. VERDICTS—*what may be considered in determining question of excessiveness.* The fact that upon a former trial a larger verdict than that complained of was rendered is proper to be considered by the appellate court.

8. VERDICTS—*when not excessive. Held,* in this case, that a verdict for $30,000 in view of the terrible nature of the injury sustained, was not excessive.

9. INSTRUCTIONS—*when upon preponderance of evidence not erroneous.* An instruction is not erroneous which advises the jury that the preponderance of evidence in a personal injury action is not necessarily determined alone by the number of witnesses testifying to a particular fact or state the facts, but that the jury should *also* take into consideration other matters enumerated.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the HON. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed April 29, 1912. *Certiorari* denied by Supreme Court (Making opinion final).

G. W. KRETZINGER, L. L. SMITH, E.C. FIELD, WINSTON PAYNE, STRAWN & SHAW and H. R. KURRIE, for appellant.

MORSE IVES, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

In the Superior Court of Cook county the plaintiff, Haynes L. Hackett, on March 8, 1909, recovered a judgment of $30,000 against the defendant, the Chicago, Indianapolis and Louisville Railroad Company. It was based on the verdict of a jury, assessing the amount as damages for personal injuries received by the plaintiff while a switchman in the employment of the defendant.

Before entering judgment on the verdict, the Court below denied a motion for a new trial and a motion in arrest of judgment made by the defendant.

The cause has been brought here on appeal by the defendant and various assignments of error are made attacking the proceedings, the verdict and the judgment.

Both sides of the contention have been in this Court presented orally as well as by printed briefs and arguments. We have given to the cause the diligent attention which its importance, arising both from the large amount of the judgment and the character of the questions involved, demanded, but notwithstanding the re-

finement and elaboration of argument with which the cause of appellant has been presented, we have not found difficult the decision of the questions of law and fact which have been presented.

As to the latter there seems to us little question.

The uncontradicted evidence showed this state of facts:

On February 4, 1907, the plaintiff, Haynes L. Hackett, then 29 years old, was a switchman in the employ of the defendant, the Chicago, Indianapolis and Louisville Railway Company—usually known as "The Monon"—and had been for two years and a half at work for it in the railroad switch yard at Monon, Indiana. On that day he went to work in that yard at his usual occupation about six in the morning. At seven occurred the accident which was the occasion of this suit. By it he lost both legs, which were, in consequence of injuries received by a stone car passing over them, necessarily amputated between the knee and the hip.

The cause and manner of the accident were these: The persons working in the yard in "switching cars, placing them and making up trains" at the time, were the plaintiff, the engineer of a switching engine, the fireman of that engine, and one Lowe, the foreman of the yard, who had charge of the work as his regular duty and who gave orders to the plaintiff, who was helper and switchman, and to the engineer and fireman of the switching engine. A Mr. Gwinn was the yard master and agent at Monon for the railway. He had an office in the station, but did not direct the work of switching cars in the yard further than to give the lists involved in the making up of trains to the foreman of the yard, Lowe, who did direct the switching and, as stated, gave to the engineer, foreman and switchman the orders necessary to carry it out, and himself also frequently set brakes.

On the morning and at the time in question, the crew

foreman, engineer, fireman and switchman, were making up a Chicago local train. In doing so they "were switching cars in and out of different tracks and getting the cars in station order for train No. 46, pulling cars out of the tracks and 'kicking' cars on the tracks." The main line of the railroad runs about east and west. The switchyard lies south of it. A main lead track runs from north of east to south of west, off which run eight switch tracks parallel with the main track of the railroad, to the southerly one of which eight tracks the main lead track finally runs and in which it ends.

The switch tracks are numbered from 1 to 8, beginning with the track next south of the main track of the railway. Some switching was done before seven o'clock on the morning in question towards making up the desired train.

Just before the accident, cars in this process of switching were so arranged that there were eight cars —four box cars and four stone cars—attached to an engine headed northeasterly, standing on the main lead. The box cars were next to the engine. Lowe, the foreman, was standing by the cars near the junction of switch track 5 with the main lead and close to the coupling between the fourth and fifth car—the last box car and the first stone car.

The plaintiff having just thrown the number 6 switch, walked over from the south side of the lead to the north side of the lead and joined Lowe. Lowe said to him, "Haynes, I am going to cut these four cars off here and kick them in track No. 8. You go down there and get on them and ride them in the clear and stop them." At the same time Lowe raised his hand and gave the engineer a "kick" signal to kick the cars in on track 8. There was a pin lifter connected with the couplers between the box car and the stone car. A pin lifter is an operating rod extending out from the corner of the car, so arranged and connected with the couplings that a

man can disconnect them without getting between the cars. It extended north or west from the couplings here involved towards Lowe. The couplings were in good working order, as the plaintiff had occasion to notice, and had noticed that morning.

On receiving the order from Lowe, the plaintiff crossed over the lead between the switches 6 and 7 and passed in a southwesterly direction to the south side or the southeasterly side, as it might be called, of the main lead, stopping a little west of switch 7. He went to the southerly side of the main lead (which terminated in switch track No. 8), as he explained in his testimony, because cars were standing on switch track 7, so close to the clear that it was unsafe to attempt to mount a car passing onto track 8 from the north side. As the train backed in towards track 8 the plaintiff mounted the car that first passed him by its southeast corner, where there was a ladder to climb by. At that point he could not see whether the cut had been made as Lowe had told him it was to be. The car was moving at the rate of four or five miles an hour. On getting to the top of the car, which was loaded with stone, he started to walk over the stone from the east to the west end of the car and there set the brake. When he was within six to eight feet of the end of the car and the train had moved perhaps 160 feet, he heard a click in the cars, glanced around and saw that the cut which Lowe had said he was going to make had not been made. He received no other warning, but knew from the sound that the engine had slowed down towards a stop, without the cut, and realizing his danger made a grab for the brake. It was too late. "The slack" as he expressed it, had come into the car; the car was violently jerked and the plaintiff was hurled over the end of the car and before it, and despite all his efforts to free himself the car passed over both his legs completely crushing them. The plaintiff, speaking from his experience as a switchman, testified: "If Mr. Lowe

had cut those cars off at the time and place that he said he was to cut them off, this jerk from the slack in the cars would have been avoided.  It wouldn't have been there at all because if the cars had been cut off and the draw bars separated, the cars would have been allowed to roll at their own free will without this slack at the other end jerking them.  There wouldn't have been any jerk at all."  And indeed, the language of the Supreme Court of Indiana in Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company v. Nicholas, 165 Ind. 679, a case where the facts were very similar to those in the case at bar, is warranted.  "It is a matter of common knowledge that the sudden stopping of an engine propelling a train of cars will result in a violent jerk of the cars at the end of the train remote from the engine."

"Kicking" cars onto a switch track is a usual and customary method of work in a railroad yard, and is done by giving momentum to the cars when they are shunted or backed on the track and allowing them, uncoupled from the engine, to roll, as the plaintiff says, at their own free will until the momentum is expended or they are stopped by setting the brakes.

In this case, according to the plaintiff's testimony, he was, in mounting the most westerly car and attempting to go to the brake at the front end, following the custom of the yard and of his business.  He says, "It was customary when we kicked a cut of cars any distance or shoved a cut of cars any distance around the yard anywhere, for a man to always be on the front end of the cut."  He further testified that Lowe had told him that when they were shoving a cut of cars around there on the main track or on the side tracks any distance, he was always to be on the front end of the cut to assure safety, and that there were frequently people about the yard picking up coal and section men working at the track.

The evidence adduced by the defendant on cross-ex-

amination of the plaintiff indeed tended to prove that
even without any special order it was the duty of the
plaintiff to have got on the car and set the brake, and
it offered as direct evidence a rule of the Company as
follows: ''When a train is being pushed by an engine,
except when shifting and making up trains in the yards,
a flagman must be stationed in a conspicuous position
on the front of the leading car so as to perceive the
first sign of danger and immediately signal the engine
man.'' Mr. Gwinn, the yard master, however, testi-
fied that ''the custom was to ride the head car on the
main track or over any switches or going over street
crossings. There was never any custom in the yard
where there was no crossings, no wagon crossings nor
street crossings of any character. At the place where
Mr. Hackett was injured there were no street cross-
ings.''

There is no contention that the cars were uncoupled,
as Lowe said they were to be, nor that any warning was
given to the plaintiff that they were not.

Eliminating for the moment from the discussion the
question arising from the common employment or fel-
low servant doctrine, as to the liability of the defend-
ant—(a question which in this case is rendered by In-
diana legislation, to be hereafter noted, a question of
law involving the construction of a statute) and inde-
pendently of the questions of pleading raised by the
defendant, on which great emphasis is laid in the argu-
ments in its behalf—we can see no reason why the jury
should have failed to hold, as their verdict shows they
did hold, that the negligence of Lowe was the cause of
the accident, and that the plaintiff was not guilty of
negligence contributing thereto. We could make this
no clearer than the statement of facts before given has
made it. Again, to quote from Railway Company v.
Nicholas, *supra:* ''It is a matter of common knowledge
that the sudden stopping of an engine propelling a train
of cars will result in a violent jerk of the cars at the end

of the train remote from the engine. The conductor''
—in the case at bar, the foreman who was controlling
the movement of the train—''must have known this
fact and its probable effect upon appellee, and his act
in causing the train to be stopped in the manner and
under the circumstances alleged was negligence.
* * * It sufficiently appears that the conductor
owed appellee the duty either to cut off the car himself
or cause it to be done before giving the signal for a
sudden stopping of the engine.''

It is indeed suggested in argument that the foreman
may have ''done everything needed to uncouple the
cars,'' or that the ''engineer may have slowed down
without a signal and before the foreman thought the
cars had sufficient momentum to justify cutting them
off.'' But there was no attempt on the part of the de-
fendant to prove either of these hypotheses, and the
evidence as it stands was amply sufficient, in our opin-
ion, to enable the jury to draw a legitimate inference
that neither of them was true. While under the law as
stated in Illinois the doctrine of *res ipsa loquitur* does
not apply between employer and employee, it does not
follow that courts or jurymen having before them all
the conditions of an accident, cannot find negligence by
inference from the evidence, without the necessity of
evidence by eye witnesses of what did or did not take
place.

The jury were emphatically instructed, at the in-
stance of the defendant, that the plaintiff could not
recover unless he had proved by a preponderance of
the evidence that the foreman was negligent in failing
to cut off the cars or in failing to give him warning of
the danger; and we think they were justified in holding
that such preponderance existed.

The jury were also correctly instructed as to con-
tributory negligence, and we think that they were jus-
tified in finding that no such contributory negligence
or want of due care on the part of the plaintiff ap-

peared, either in mounting the car, in walking over the load to the front end, or in failing to throw himself down or sit down when the "click" came. As to the suggestion made by the defendant as to the action of the plaintiff after hearing the "click," the language of the Appellate Court of Indiana in Cleveland, etc., R. Co. v. Bossert, 44 Ind. App. 245, is certainly as applicable to this case as it was to that: "He acted in an emergency and to avoid peril. One who does an act under an impulse or upon a belief created by a sudden danger attributable to another's negligence, is not to be regarded as guilty of contributory negligence even though the act would be regarded as a negligent one if performed under circumstances not indicating such peril."

Nor is there any criticism arising out of the "assumption of risk" doctrine to be made of the verdict of the jury. They were instructed on this matter quite as favorably as the defendant had a right to ask, and the language of the Supreme Court of Indiana in C. C. C. & St. L. R. Co. v. Gossett, 172 Ind. 525, is apt for quotation here: "The jerks and jars given without warning to a brakeman who had received notice from competent authority and had been led to believe that no jerks would be made at the time, are not usual and ordinary jerks, and it is not accurate to say their risk is assumed as an implied risk of the service."

By these eliminations our consideration of the liability of the defendant may be confined to the effect upon it of the "fellow servant" or "common employment" doctrine, as that doctrine is understood by the courts of Indiana, and expounded in the opinions of those courts introduced in evidence herein. Our duty is still further lightened by the fact that the counts of the declaration, founded on the common law doctrines of liability of the railroad, were successfully demurred to, and by the practical although not the express concession by the plaintiff that the foreman, Lowe, and

the plaintiff might be so regarded as fellow servants that the railroad company would escape liability for the result of Lowe's negligence, were it not for the Act of the Indiana Legislature, approved March 4, 1893, and entitled "An Act regulating liability of Railroads and other Corporations," etc., and commonly known as the Employes Liability Act of Indiana.

The following is the First Section of this Act:

"Section 1.   Be it enacted by the General Assembly of the State of Indiana: That every railroad or other corporation except municipal, operating in this State, shall be liable in damages for personal injury suffered by an employe while in its service, the employe so injured being in the exercise of due care and diligence in the following cases:

*First.*   Where such injury is suffered by reason of any defect in the condition of ways, works, plant, tools and machinery connected with or in use of the business of such corporation when such defect was the result of negligence on the part of the corporation or some person entrusted by it with the duty of keeping such way, works, plants, tools or machinery in proper condition.

*Second.*   Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employe at the time of the injury was bound to conform and did conform.

*Third.*   Where such injury resulted from the act or omission of any person done or made in obedience to any rule, regulation or by-law of such corporation or in obedience to the particular instructions given by any person delegated with the authority of the corporation in that behalf.

*Fourth.*   Where such injury was caused by the negligence of any person in the service of such corporation, who has charge of any signal, telegraph office, switch yard, shop, round house, locomotive engine or train upon a railway, or where such injury was caused by the negligence of any person, co-employee or fellow servant engaged in the same common service of any

such corporation, the said person, co-employee or fellow servant at the time acting in the place and performing the duty of the corporation in that behalf, and the person so injured obeying or conforming to the order of some superior at the time of such injury, having authority to direct; but nothing herein shall be construed to abridge the liability of the corporation under existing laws.''

The plaintiff maintains that under the second subdivision of this Section he can recover from the defendant corporation ''because his injury resulted from the negligence of a person in the service of the corporation to whose order or direction he at the time of the injury was bound to conform and did conform.'' This contention is the especial basis of the third count of the declaration filed March 22, 1907, and of the first count filed October 5, 1908.

He also maintains that he should recover under the first paragraph of the fourth subdivision of the Section because ''the injury was caused by the negligence of a person in the service of the corporation who had charge of * * * a switchyard.'' This is the especial basis of the third count filed October 5, 1908.

Again he contends that he has also a right of recovery under said first paragraph of said fourth subdivision, because ''the injury was caused by the negligence of a person in the service of said corporation who had charge of * * * a locomotive engine * * * upon a railway.'' This is relied on in the fifth count filed October 5, 1908.

And, further, he contends that he has a right of recovery under said first paragraph of said fourth subdivision, because the injury was caused ''by the negligence of a person in the service of said corporation who had charge of * * * a train * * * upon a railway.'' This contention is the particular basis of the seventh count filed October 5, 1908, and of both the first and second counts filed November 7, 1908.

There are other counts in the declaration, to which the general issue was pleaded and on which the case went to the jury, but they are practically if not expressly abandoned by the plaintiff—most of them because they contained allegations that there was a custom, under the circumstances detailed, to warn the brakeman of danger, and because there was no evidence adduced of said custom.

It is therefore on these seven counts—the 3rd of March 22, 1907, the 1st, 3rd, 5th and 7th of October 5, 1908, and the 1st and 2nd of November 7, 1908—that the plaintiff now relies to justify the judgment.

The questions for us to decide, arising from the contentions of the respective parties, are therefore these:

*First:* Is the Employers Liability Act of Indiana, on which the right of action is predicated by the plaintiff, a valid and constitutional enactment governing this case?

*Second.* If the Act is constitutional, does any one of the counts before mentioned sufficiently state a cause of action under it as to be good after verdict?

*Third.* Was there evidence sufficient to go to the jury to sustain the allegations of said count?

*Fourth.* Were there any errors in the instructions to the jury which necessitate a reversal of the judgment?

*Fifth.* In view of all the evidence, was the verdict clearly and manifestly against the weight of the evidence?

*Sixth.* Are the damages assessed by the verdict so excessive as to demand a reversal or *remittitur?*

Although the unconstitutionality of the statute in question, both as respects the Federal Constitution and the Constitution of Indiana, is asserted by the defendant, we cannot see how it can be even plausibly maintained that we should assent to the proposition. The Supreme Court of the United States in Louisville & Nashville Railroad Company vs. Melton, 218 U. S. 36,

has unequivocally declared the Act not in contravention of the Constitution of the United States, and has gone even farther in its holdings as to the persons for whose benefit it may be invoked than the Supreme Court of Indiana, and, apart from any question as to how far we can take notice of the Constitution of Indiana, which is not in evidence in this case, the Supreme Court of Indiana in Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Rogers, 168 Ind. 483, used this language:

"It was held by this Court in Pittsburgh, etc., R. R. Co. v. Montgomery, 152 Ind. 1; Indianapolis Union R. Co. v. Houlihan, 157 Ind. 494; Pittsburgh, etc. R. Co. v. Lightheiser, 168 Ill. 438; Pittsburgh, etc. R. Co. v. Collins, 168 Ill. 467; Pittsburgh etc. R. Co. v. Ross, 169 Ind. 3, that as applied to railroads said Employers Liability Act was not in violation of the 14th amendment of the Constitution of the United States or of any provision of the Constitution of this State. In Pittsburgh, etc. R. Co. v. Ross, *supra,* we said: 'The validity of this Act, so far as it applies to railroads, was upheld in the case of Pittsburgh, etc. R. Co. v. Montgomery, 152 Ind. 1, and that holding has been twice reaffirmed since this appeal was filed, * * * and the constitutionality of the law must be regarded as settled.' Following the case of Pittsburgh etc. R. Co. v. Ross, we hold that the constitutionality of said law must be regarded as settled, and it will not be considered in this case."

To urge that because in subsequent cases, Indianapolis Traction Co. v. Kinney, 171 Ind. 612, and Cleveland, etc. R. Co. v. Foland, 174 Ind. 411, the Supreme Court of Indiana as a matter of construction held that "to keep within constitutional limitations the statute must be construed as designed exclusively for the benefit of those who are in the course of their employment exposed to the particular dangers incident to the use and operation of railroad engines and trains

and whose injuries are caused thereby," and further held that the "rule in this State and the reason for the statute *and the basis on which its constitutionality is grounded* is that of the hazards attending the operation of trains,"—we should overrule the Supreme Court of Indiana and declare that as applied to a person exposed to and injured in consequence of the hazards of his occupation on a railroad, the Act is in violation of the Constitution of Indiana, involves a refinement of reasoning which we cannot follow.

As to the second question involved, namely, whether any one of the counts relied on by the plaintiff sufficiently states a cause of action as to be good after verdict, we are manifestly not obliged in this discussion to consider all said counts. But in reviewing the case we have done so and have concluded that each of the seven is so sufficient to sustain the judgment.

But if one count or more is thus sufficient, it is enough in a case like this, where the instructions, as we hold, are not so framed as to involve the possibility that the jury may have found the defendant guilty merely on a faulty count. Practice Act of Illinois, Section 78; United States Rolling Stock Company v. Chadwick, 35 Ill. App. 474.

To avoid unnecessary prolixity in this opinion, therefore, we shall, *pro hac vice,* ignore all but the 7th count filed October 5, 1908, and the 2nd count filed November 7, 1908, which for convenience we will denominate Counts A. and B. respectively.

Count A. (1) sets up the Employers Liability Act in full; alleges (2) that the plaintiff on the day of the accident was employed by the defendant as a brakeman and switchman in a switchyard of the defendant at Monon; (3) that there was then in the service of the defendant in the switchyard a foreman; (4) that the plaintiff was engaged in the performance of his duties as a brakeman and switchman and working under the orders of the foreman; (5) that there was

in the switchyard a train of eight cars coupled to one
another in a train, with a locomotive engine attached
to one end of the train, standing upon a main lead;
(6) that the foreman had charge of said train; (7)
that the foreman notified the plaintiff that he was go-
ing to uncouple from said train the four cars farthest
from the engine and "kick" said cars onto a certain
switch track; (8) that the foreman ordered the plain-
tiff to stop said four cars after they had run in on
said switch track; (9) that said foreman did not kick
said cars into the switch track or cause the same to
be done, but gave to the engineer a "kick" signal and
caused the cars to be started and shoved into said
track without uncoupling the said four cars from the
train; (10) that in obedience to said order of the fore-
man and in the performance of his duty as switchman
and brakeman the plaintiff went on the car farthest
from the engine and prepared to set the brake on the
forward end of the car; (11) that said foreman knew
or ought to have known that the plaintiff was obey-
ing said order and preparing to set the brake on said
car; (12) that said foreman knew or ought to have
known that said car was liable to stop suddenly or its
speed to be suddenly slacked, and the car violently
jerked; (13) that said foreman knew or ought to have
known that the car had become, by reason of his not
uncoupling said cars, a place of great danger to the
plaintiff; (14) that said foreman had ample time to
notify the plaintiff that the said cars had not been
uncoupled and to warn him of his danger; (15) that
the foreman negligently and carelessly failed to notify
the plaintiff that the said cars had not been uncoupled,
and failed to warn him of the danger; (16) that plain-
tiff did not know and in the exercise of due care and
diligence for his own safety would not have known
that said cars had not been uncoupled and his place
on the cars attended with danger; (17) that said cars
were suddenly and violently jerked, and by reason

of the negligence and carelessness of said foreman in failing to warn the plaintiff, the plaintiff was unable to protect himself against the jerk and was thrown with great violence from the car and was run over and injured.

It is manifest that the primary object of a pleading is fulfilled in this count. It so clearly explains the wrong complained of that no one, lawyer or layman, certainly no one who knew or had explained to him the technical meaning of "kicking cars," as the phrase is used in railroad circles, could fail to understand just what was claimed. It is also manifest that it states a very clear case of negligence against the foreman, and brings it home to one who is alleged to have been in the service of the defendant corporation and in charge of a train.

But the defendant insists that it does not state a cause of action under the Employers Liability Act of Indiana, because (a) the facts averred show that the foreman was not in charge of a train; (b) that there is no special order averred, and the negligence is shown to be that of a fellow servant; (c) that the negligence is not so alleged as to show that it was negligence in an act of control, which it is maintained it must be to render the defendant liable under the terms of the Act; and (d) that there are no facts averred showing negligence on the part of the foreman. It is said that the foreman "did not order plaintiff to get on the car, and for aught that appears did not even know that he was on the car;" also that "no facts are stated showing any knowledge by the foreman that a failure to cut off the cars involved any peril to the plaintiff."

To the first of these contentions the defendant's argument cites Thyng v. Fitchburg R. R. Co., 156 Mass. 13. The Court decided in that case merely that it was not the negligence of a person in charge of the train by which the person was injured and on which

he worked, that caused the accident, and that the statute of Massachusetts could not be applied merely because two cars broke apart which had been previously put together in a switching yard, and because there a conductor of a switching engine had charge of making up freight trains. But the Court expressly says: "A conductor of a switch engine which is drawing several cars under his direction may be for the time in charge of a train consisting of the engine and cars," and cites Dacey v. Old Colony Railroad, 153 Mass. 112, to that effect. To the same purport are Caron v. Boston & Albany Ry. Co., 164 Mass. 523; Shea v. N. Y. etc. R. Co., 173 Mass. 177, and Pittsburgh, etc. R. Co. v. Ross, 169 Ind. 3.

We hold that Lowe was in charge of the train mentioned in the count, and that the allegations of the count that after ordering the plaintiff to stop said cars on the switch track and telling him that he was going to uncouple them, the foreman gave a "kick" signal to the engineer, but did not uncouple the cars, are sufficient allegations of facts to support an inference of negligence in an act of control, and to bring the case within the Act, especially after verdict. But moreover, we do not hold that the negligence must be in an act of control. Despite the argument made to the contrary by counsel for defendant, we fail to see that the Supreme Court of Indiana in Chicago, Indianapolis & Louisville Railway Company v. Williams, 168 Ind. 276, did not expressly hold that it would be "a fallacious and untenable" position that "would make the statute meaningless" to hold that "the negligence of one in charge or control of a train for which a liability is imposed" by the Act, must be "negligence in doing some act which is an act of charge or control of a train" rather than merely "a negligent act occurring at a time when the doer of the act is in charge or control of a train." In the face of this decision a prior decision by the Appellate Court of Indiana

or decisions of other courts on different statutes are not important. But in this case we consider the question academic.

As for an averment of knowledge on the part of the foreman that the plaintiff was on the car, it is implied in the statement that the foreman knew that the plaintiff was "obeying the order" "to stop the cars on the south track," and "to set the brake on the car." The knowledge of plaintiff's position need not have been actual, if it was constructive. Clear Creek Stone Co. v. Carmichael, 37 Ind. App. 413.

So, also, is there an averment that, under the circumstances of the kick signal without uncoupling, the car was liable to jerk violently and to become a place of peril to the plaintiff, a fact which the Supreme Court of Indiana in the Nicholas case, *supra,* practically says indeed is "a matter of common knowledge."

We think the circumstances averred sufficiently showed the duty to warrant a general allegation of negligence. C. & E. R. Co. v. Lain, 170 Ind. 84.

As to the objection that such order as is averred was not special, and therefore, under such Indiana decisions as Indianapolis Street Ry. Co. v. Kane, 169 Ind. 25, the statute could not be held to apply, it seems to us to spring from a misconception of what it is necessary to state to make a cause of action under the first paragraph of the Fourth subdivision of Section 1. It is not necessary to show or allege an order of any kind. The order which is alleged in this count is proper to consider as one of the facts and circumstances which show the duty and the negligence of the foreman, but it is not in itself the basis of the right of recovery in the plaintiff.

In B. & O. S. W. R. Co. v. Little, 149 Ind. 167, in Indianapolis Union Ry. Co. v. Houlihan, 157 Ind. 494, in Thacker v. O., I. & L. Ry. Co., 159 Ind. 82, and in C. I. & I. Ry. Co. vs. Williams, 168 Ind. 276, and in other cases the Supreme Court of Indiana has

decided that the first paragraph of the Fourth subdivision of the Act is complete in itself. In Indianapolis Union Ry Co. v. Houlihan, *supra*, a part of the language of the Court is: "From the words used and the structure and scope of the Act, we are of the opinion that the concluding clauses of the Fourth Subdivision limit and qualify only the liability expressed in the second part of the fourth subdivision, and that railroad companies are answerable for the negligence of their servants in charge of signals, telegraph offices, switch yards, shops, round houses, locomotive engines and trains upon their railways to their employes the same as strangers."

But we must not be understood as expressing an opinion in this case that the order averred and proved was not a special one, nor that under other subdivisions of the Section and under the second part of the Fourth, a case is not stated in the declaration or not proven in the evidence. As we have heretofore said, it is not necessary for us to express an opinion either way on these contentions.

Turning now to the second count filed November 7, 1908, which we have designated B., we find the same allegations of the existence of the statute in question as in Count A. and the same allegations of the employment of the plaintiff and of the foreman in the switchyard by the defendant, of the situation of the train and of the foreman's charge of it. The count then proceeds: "The plaintiff by order of the foreman went upon one of the cars to set the brake thereon, * * * and said foreman then and there so negligently and carelessly ran and managed said train that the speed of said train was suddenly slackened and the cars thereof violently jerked; * * * the plaintiff was then and there in the exercise of due care and caution for his own safety * * * and by reason of said negligence and carelessness of the foreman" the plaintiff was injured.

Defendant's counsel say "the pleading does not make a case within any of the provisions of this Act." We fail to see why it does not. The allegation of the negligence is more general than in count A., but we think, in view of the considerations we have already referred to, they are entirely sufficient both as averring constructive knowledge on the part of the foreman of the dangerous position of the plaintiff and as alleging a negligent management by the foreman of the train.

We do not think it necessary to discuss the question whether any defects in the two counts mentioned were cured by the verdict, for we consider them as good even as against special demurrers. But it is certainly the law of this State, often declared, that many declarations which are defective statements of a cause of action, and which on proper demurrer could not be sustained, are good after verdict. Especially is this true in actions of tort for negligence, where the fault of the declaration is the generality of the statement concerning the negligence. A somewhat elaborate statement of the Illinois decisions on this doctrine can be found in the opinion in Grace & Hyde Co. v. Sanborn, rendered in this court (124 Ill. App. 472), concluding with the quotation of the language of the Supreme Court in Sargent Co. v. Baublis, 215 Ill. 428: "On demurrer a declaration is construed against the pleader, but after verdict all intendments and presumptions are in his favor." Tried by this test, even the technical objections suggested by the defendant to the soundness of the counts in question fade away.

The Alabama cases which are cited to show that the foreman's name should have been mentioned, we do not regard as of binding authority nor approving themselves to right reason. In any event, they could not apply to objections to a declaration raised after verdict.

What we have heretofore said indicates sufficiently

our answer to the Third principal question before us
—''Was there evidence sufficient to go to the jury to
sustain the allegations of any count of the declara-
tion?''; and to the Fifth—''Was the verdict clearly
and manifestly against the weight of the evidence?''

The evidence explained (if explanation was needed)
the term ''kick;'' showed the order—whether it were
general or special—of the foreman, from which, in
connection with the usual course of work in the yard
(which there was certainly evidence tending to prove),
the knowledge by the foreman of the dangerous posi-
tion of the plaintiff might fairly and legitimately be
inferred by the jury; it tended to prove even that the
foreman had reason to know that the plaintiff, when
the engine would slow down or stop, would be near the
foremost end of the car; it tended to prove that the
plaintiff had reason to suppose that the place would
be reasonably safe for him, and that he was therefore
in the exercise of due care in taking it, and it tended
to prove that he was not notified or warned of any
extraordinary danger, and that the foreman did not,
although the means were at his hand, uncouple the
cars as he had notified the plaintiff he was intending
to do. It showed also that the foreman was in charge
and control of the train and its movements. We
think the jury were justified in the finding, implied by
their verdict, that the foreman was guilty of negli-
gence and that the plaintiff was not, and that the fore-
man was in charge of the train. Such a finding ren-
dered inevitable, under the Act, the conclusion that
the defendant was liable.

The defendant maintains, however, that even if the
defendant can be held liable, the judgment should be
reversed because the damages are so excessive as to
show passion and prejudice—so excessive that the
error could not be cured by a *remittitur*. The dam-
ages assessed by the jury are very large—much larger
undoubtedly than would have been sustained in

earlier years, even in such a case, by the Court of last resort in Illinois. But the standards set by that Court have changed in later years, and in view of the terrible nature of the injuries—as severe as a man could well suffer—we do not feel justified in interfering with the decision of the jury on this ground. The jury were, as we think, properly instructed on the subject of damages, and we must assume that they meant to make them only compensatory, not punitive. The measure of compensation cannot be reduced to the mathematical formula which the appellant's criticisms suggest. The jury were not bound, even in considering the income of which the plaintiff was likely to be deprived, to estimate it as probably remaining for life, had he not been injured, at the same figure. Nor were they confined to the question of a probable future earning power even.

In considering the contention that the verdict must have been the result of passion and prejudice, we may not overlook the fact that the record shows that it was given at a second trial, and that at the first trial the jury which, like this one, had the plaintiff before them, assessed the damages at forty thousand dollars.

The final matter for us to consider is the question:

"Were there any errors in the instructions to the jury which necessitate a reversal of the judgment?"

We have no hesitation in answering this question in the negative. The most serious objections to the instructions which we find upon examination of them, are that some of them, given at the instance of the defendant, are too favorable for the defendant to be consistent with what we think the correct construction of the Employers Liability Act of Indiana. But of these, of course, the appellant does not and cannot complain.

Its objections to those of which it does complain are hypercritical.

The first instruction, which advised the jury that the preponderance of evidence in a case is not necessarily determined alone by the number of witnesses testifying to a particular fact or state of facts, but should *also* take into consideration other matters enumerated, was neither inaccurate nor misleading in this case. Even in the materially different form (which left out the word "also") in which the general idea was expressed, which was criticised in Ry. Co. v. Lawlor, 229 Ill. 621, we do not know of any case in which it by itself worked a reversal. By the use in this case of the word in the Lawlor case omitted, the instruction seems to avoid the ground upon which the criticism was placed in that case. That the instruction should have misled the jury into believing, to quote from appellant's brief, that "in determining the right to recover the amount of damages might be considered," is inconceivable.

Instruction 2 has been frequently approved. See Electric Co. v. Rooney, 138 Ill. App. 275, 294. We have never in this Court commended Instruction 3, but it has been frequently approved by the Supreme Court and its correctness has been thus established. Chicago City Railway Co. v. Fennimore, 199 Ill. 9; see Chicago & Eastern Ill. R. R. Co. v. Fowler, 138 Ill. App. 352, 360 (reversed on another point).

As to instruction 5, we see no objection to it. It has been approved by the Supreme Court and this Court. We do not deem it within the bounds of probability or even possibility that it could have misled the jury. The instructions concerning damages, taken together, furnished the jury with an accurate statement of the law in relation thereto.

The judgment of the Superior Court is affirmed.

*Affirmed.*